UNITED STATES of America,
Plaintiff-Appellee,

v.

Y. HATA & COMPANY, LIMITED, a
corporation, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Minoru HATA, Defendant-Appellant.

Nos. 75–1681 and 75–1680.

United States Court of Appeals,
Ninth Circuit.

May 5, 1976.

Edwin Y. Sasaki (argued), Honolulu, Hawaii, and George Alexander McKray (argued), San Francisco, Cal., for defendants-appellants.

Thomas S. Brett, Atty. (argued), Consumer Affairs Section, Antitrust Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

## OPINION

Before BROWNING and WRIGHT, Circuit Judges, and ANDERSON,* District Judge.

PER CURIAM:

This is an appeal from convictions of a corporation and its agent under the Federal Food, Drug and Cosmetic Act (the Act) [June 25, 1938, c. 675, 52 Stat. 1040; 21 U.S.C. § 301 *et seq.*].

Appellants argue:

(1) The trial court should have instructed the jury that defendants could not be convicted if it was "objectively impossible" for them to prevent violations of the law; and

(2) The indictment should have been dismissed because of systematic discrimination in the enforcement of the Act.

We reject both contentions, and affirm.

The indictment was based upon inspections in May and June of 1972 of a multi-food storage warehouse owned by Y. Hata & Co., Ltd. (the corporation) on the island of Maui, Hawaii. The Federal Food and Drug Administration (FDA) discovered during those inspections that birds were flying in and out of the warehouse, perching on overhead sprinkler pipes and on bags of rice, and eating from rice bags. Bird excreta were found on some rice bags.

In November 1973, a single, three-count indictment was filed charging the corporation, along with its president, Minoru Hata,

and one Randy Ueki, with violations of the Act. After a jury trial both the corporation and Hata were convicted on one count, and acquitted on two.[1] This appeal involves only the convictions on Count III, dealing with adulteration of rice.

## I.

### THE "OBJECTIVE IMPOSSIBILITY" DEFENSE

A. *United States v. Park,* 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975).

*United States v. Park* controls this appeal.[2] In that case defendant Park, the chief executive officer of a national retail food chain, was convicted and fined under Section 303 of the Act [21 U.S.C. § 333] for violation of Section 301(k) [21 U.S.C. § 331(k)]. After the presentation of evidence, defense counsel challenged the jury instructions which were patterned after language in *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). *See Park,* 421 U.S. at 665 & n.9, 95 S.Ct. at 1908, 44 L.Ed.2d at 497. Defense counsel did not, however, request an instruction to the effect that "the Government was required to prove beyond a reasonable doubt that respondent was not without the power or capacity to affect the [violative] conditions . . . ." *Id.* at 676, 95 S.Ct. at 1913, 44 L.Ed.2d at 503.

A divided Fourth Circuit reversed the conviction, ruling that due process required proof of "some act of commission or omission," and that the trial judge failed to so instruct the jury. *United States v. Park,* 499 F.2d 839, 841–42 (4th Cir. 1974). It suggested that on retrial the government must prove "wrongful actions," defined as "gross negligence and inattention" to responsibilities. *Id.* at 842.

The Supreme Court reversed. It first held:

---

* Honorable J. Blaine Anderson, United States District Judge for the District of Idaho, sitting by designation.

1. The indictment against Ueki was subsequently dismissed, and he is not a party to this appeal.

2. This case was on direct appeal at the time of filing of the Supreme Court's opinion in *Park. See Hamling v. United States,* 418 U.S. 87, 102, 94 S.Ct. 2887, 2899, 41 L.Ed.2d 590, 611 (1974); *Linkletter v. Walker,* 381 U.S. 618, 627, 85 S.Ct. 1731, 1736, 14 L.Ed.2d 601, 607 (1965).

[T]he Government establishes a prima facie case when it introduces evidence sufficient to warrant a finding by the trier of the facts that the defendant had, by reason of his position in the corporation, responsibility and authority either to prevent in the first instance, or promptly to correct, the violation complained of, and that he failed to do so.

421 U.S. at 673–74, 95 S.Ct. at 1912, 44 L.Ed.2d at 502. By this language the Court reaffirmed the *Dotterweich* "responsible relation" concept. *See* 421 U.S. at 668–70, 95 S.Ct. at 1909–11, 44 L.Ed.2d at 498–500.

However, the Court in *Park* read the Act as imposing upon corporate officers a duty to maintain "the highest standard of foresight and vigilance . . . [without requiring] that which is objectively impossible." 421 U.S. at 673, 95 S.Ct. at 1912, 44 L.Ed.2d at 501.

The Court next held in *Park* that the jury instruction, read as a whole, fairly apprised the jury of the need to focus on defendant's "accountability, because of the responsibility and authority of his position, for the conditions which gave rise to the charges against him." 421 U.S. at 675, 95 S.Ct. at 1913, 44 L.Ed.2d at 502. It suggested that, while the instruction might have been clearer, the failure to amplify was not an abuse of discretion. *Id.*

Finally, in dictum the Court stated that if requested an instruction on "objective impossibility" or lack of "power or capacity" should be given if defendant first presents sufficient evidence to put such a claim at issue.[3] 421 U.S. at 676–77 & n.19, 95 S.Ct. at 1913–14, 44 L.Ed.2d at 503–04.

*B. Application Of Park To This Appeal.*

This appeal, as did that in *Park,* involves Sections 301(k) and 303 of the Act. In the case at bar the trial court instructed the jury:

---

**3.** The Court's suggestion, 421 U.S. at 676, 95 S.Ct. at 1913, 44 L.Ed.2d at 503, that a district court's failure to give *sua sponte* the "objective impossibility" instruction may under some circumstances constitute "plain error," implies

---

[Y]ou must find beyond a reasonable doubt . . . that they [Hata and Ueki] held responsible positions . . . related to the part of the business . . . which caused the adulteration. . . .

You are instructed that the government need not prove that the defendants knew that they were violating the law or that they intended to violate the law. Good faith or good intent is not a defense to this crime. . . .

[Y]ou may find that the defendants Minoru Hata and Randy H. Ueki guilty if you find that at the time the corporation caused the adulteration, the defendants held responsible positions related to the adulteration by the corporation.

This instruction tracks closely with the one found acceptable by the Court in *Park.* *See* 421 U.S. at 674, 95 S.Ct. at 1912, 44 L.Ed.2d at 502. We cannot say that, "viewed in the context of the overall charge," 421 U.S. at 674, 95 S.Ct. at 1912, 44 L.Ed.2d at 502, the instruction in this case failed to comply with *Park.*

In the instant case, unlike that in *Park,* the defendants specifically requested an "objective impossibility" instruction.

■ We assume, as did the Court in *Park,* that if sufficient appropriate facts are shown, a proper "objective impossibility" instruction must be given if requested. We next consider whether such an instruction was required here.

Since the impuissance or "objective impossibility" defense is " 'to be raised defensively at a trial on the merits' ", *Park,* 421 U.S. at 673, 95 S.Ct. at 1912, 44 L.Ed.2d at 501, *quoting United States v. Wiesenfeld Warehouse Co.,* 376 U.S. 86, 91, 84 S.Ct. 559, 563, 11 L.Ed.2d 536, 539 (1964), it is appropriate to analogize to the entrapment defense.

In *United States v. Payseur,* 501 F.2d 966, 971 (9th Cir. 1974), we stated:

that the instruction must be given when requested and warranted by facts presented by the defendant. *See also* 421 U.S. at 673, 95 S.Ct. at 1912, 44 L.Ed.2d at 501.

When a material question of fact on the issue of entrapment has been presented, the court must submit the issue to the jury. However, whether the elements of the defense have become an issue of fact for the jury is to be determined by the trial judge. [Citing cases.]

In *United States v. Christopher,* 488 F.2d 849, 850–51 (9th Cir. 1973), we provided the following guideline for determining whether sufficient evidence was present to mandate the giving of an entrapment instruction:

The slight testimony which we have held allows the issue of entrapment to go to the jury must still constitute some evidence of inducement or persuasion by the Government.

*Compare Pierce v. United States,* 414 F.2d 163, 166 (5th Cir. 1969). *Cf. Perkins v. United States,* 315 F.2d 120, 124 (9th Cir. 1963).

■ Applying these standards to the case before us, we find that appellants were not entitled to the instruction requested.

From both the record and appellants' opening brief it is clear that appellants were aware of the bird infestation problem as early as August 1971. Appellants tried numerous devices to prevent birds from entering the company warehouse. None was completely successful. At the time of the FDA inspections in May and June 1972, appellants were planning to enclose the food storage area of the warehouse in a huge wire cage which, according to the corporation's attorney, would be "a perfect setup against these birds."

Appellants' argument is:

[A]t the time of the inspection the appellants were powerless to construct the cage because materials had not arrived from the mainland of the United States.

(Emphasis added.) However, it is apparent from the record that appellants had not seriously considered the wire cage scheme until the spring of 1972.

Appellants also seem to argue that it was not "objectively possible" for them to conceive of the wire cage system substantially before the FDA inspections. This is so, they contend, despite their maintenance of "the highest standard of foresight and vigilance." *Park,* 421 U.S. at 673, 95 S.Ct. at 1912, 44 L.Ed.2d at 501.

Appellants' premise is that the "objective impossibility" defense is available to anyone, organization or individual, offering to prove inability to prevent or correct in timely fashion a violation despite maintenance of the highest standard of foresight and vigilance. The government argues that this reading of *Park* is far too broad; that the defense is available only to the corporate officer and not to the corporation itself, and applies only when the officer was in fact powerless to prevent or correct the violation, even by suspending the corporation's food warehousing activity if necessary. We need not and do not choose between these and other possible readings of *Park,* for even if appellants' interpretation were correct the defense would not be available on the facts of this case.

There was no proof or offer to prove that the wire cage system could not have been implemented long before the FDA inspections in May and June 1972. Nor could there have been such proof or offer. A wire cage is scarcely a novel preventive device. One maintaining far less than the requisite "highest standard of foresight and vigilance" would have recognized as early as August 1971 that implementation of a wire cage system would substantially, if not completely, prevent access by thieving and untidy birds.

In the context of this case, the duty imposed by the Court in *Park* to "remedy violations when they occur," 421 U.S. at 672, 95 S.Ct. at 1911, 44 L.Ed.2d at 501, includes the duty to consider and experiment with a device so commonplace as a wire cage at a time long before that of the FDA inspections in 1972.

Nowhere have the appellants offered to prove that they planned and attempted to install the wire cage system at any time prior to the spring of 1972. Even had they done so, they would have had to offer proof

that installation prior to the May and June 1972 inspections was frustrated by the inability to obtain materials from any source. We find no such offer. In fact, the trial record discloses no evidence at all of the difficulty of obtaining materials from the mainland. It is merely an assertion in the appellants' brief.

We conclude, therefore, that even under appellants' reading of *Park,* appellants were not entitled to an "objective impossibility" instruction.

## II.

### ALLEGED DISCRIMINATION IN ENFORCEMENT OF THE ACT

■ We reject appellants' contentions that the prosecution must present the grand jury with evidence it may have which would tend to negate guilt. Although some states have imposed a duty on the prosecution to disclose such evidence (*see, e. g., Johnson v. Superior Court,* 15 Cal.3d 248, 124 Cal.Rptr. 32, 539 P.2d 792 (1975)), the federal system continues to give wide discretion to the prosecution.

■ During a grand jury proceeding there is no right of cross-examination, or of introducing evidence to rebut the prosecutor's presentation. *United States v. Levinson,* 405 F.2d 971, 980 (6th Cir. 1968). As the Court stated recently in *United States v. Calandra,* 414 U.S. 338, 343–44, 94 S.Ct. 613, 618, 38 L.Ed.2d 561, 569 (1974):

> [A] grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, it is an *ex parte* investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person.

This policy is based upon an abiding confidence in the jury trial system. "[T]he greatest safeguard to the liberty of the accused is the petit jury and the rules governing its determination of a defendant's guilt or innocence." *Silverthorne v. United States,* 400 F.2d 627, 634 (9th Cir. 1968).

■ We reject appellants' contention that the government abused to such an extent the hearing process provided for in the Act [21 U.S.C. § 335], as to require dismissal of the indictment. We also reject the contention that the government cannot use "self-incriminating evidence obtained unfairly from the 21 U.S.C. § 335 hearing." Since this contention was not made in a motion to suppress prior to trial, it is deemed waived. Fed.R.Crim.P. 12(b)(2).

Finally, we reject appellants' argument that there was "sufficient pretrial publicity to warrant dismissal of the criminal indictment." Appellants concede that "the trial court did obtain an impartial jury through normal means. . . . " Their only argument is that the pretrial publicity was somehow a denial of due process.

■ The argument is both novel and without merit. The pretrial publicity issue pertains to the ultimate fairness of the trial, not to the conduct of the government in promoting the prosecution. *See United States v. Abbott Laboratories, Inc.,* 505 F.2d 565, 571 (4th Cir. 1974). By conceding that the jury was "impartial," the appellants thereby conceded that pretrial publicity did not negative the fairness of the trial.

## III.

### CONCLUSION

The convictions of Minoru Hata and of Y. Hata & Co., Ltd. are affirmed.