**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Dean STARR, Defendant-Appellant.**

**No. 74–3173.**

United States Court of Appeals,
Ninth Circuit.

May 5, 1976.

George A. McKray, San Francisco, Cal. (argued), for defendant-appellant.

Jay H. Geller, Regional Trial Atty., Los Angeles, Cal. (argued), Food & Drug Administration, HEW, for plaintiff-appellee.

OPINION

Before BROWNING and WRIGHT, Circuit Judges, and ANDERSON,* District Judge.

WRIGHT, Circuit Judge:

Cheney Brothers Food Corporation (the corporation) and its secretary-treasurer, Dean Starr, were charged in a three-count information with violating the Federal Food, Drug and Cosmetic Act (the Act) [June 25, 1938, c. 675, 52 Stat. 1040; 21 U.S.C. §§ 301 et seq.], by allowing contamination of food stored in a company warehouse. Both were convicted after a trial to the court. Starr, the only appellant, was fined $200.00 on each count. We affirm.

The information was based upon evidence gathered by an inspector for the Food and Drug Administration (FDA) during two inspections of a company warehouse in the autumn of 1972. The warehouse had been infested with mice after an adjoining field was plowed for farming. The corporation and Mr. Starr, as the one charged with handling sanitation problems, knew of the problem and took some corrective measures.

In his first inspection, leading to count one of the information, the FDA inspector discovered numerous violations of the Act, and detailed these personally to Mr. Cheney, assistant treasurer of the corporation. During this conversation and in the presence of the inspector, Mr. Cheney reprimanded the warehouse janitor, Marks, and ordered him to make corrections. Marks

had not complied as of the second inspection one month later.

Evidence showed that during the second inspection leading to counts two and three of the information, Marks told the inspector that mice were still in the warehouse and that he had not taken the corrective steps as ordered. The inspector testified, however, that during the second inspection "[Marks] did not actually tell me anything that I didn't find first."

Marks later falsely suggested to the FDA the existence of additional violations. This incident was not reported to the corporation at the time, but had no bearing on the information.

Analyzing the facts in light of *United States v. Park*, 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975), we conclude that the district court's application of the Act comports with *Park* and that the convictions were proper. Although the district judge tried the case prior to the filing of the Supreme Court decision in *Park*, it is clear that his understanding of *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943), is in the context of this case consistent with the teachings of *Park*.

The district judge stated that he was relying solely on *Dotterweich* and a concept of responsibility which considered Starr's relationship to the violation as well as his position in the corporation. This concept of responsibility is not limited to an examination of corporate by-laws and operating procedures:

> [T]hose corporate agents vested with the responsibility, and power commensurate with that responsibility, to devise whatever measures are necessary to ensure compliance with the Act bear a "responsible relationship" to, or have a "responsible share" in, violations.

*Park*, 421 U.S. at 672, 95 S.Ct. at 1911, 44 L.Ed.2d at 500.

■ The district court found that "Mr. Starr had the responsibility of the actual

* Honorable J. Blaine Anderson, United States District Judge for the District of Idaho, sitting by designation.

operation of the warehouse, and therefore the responsibility out of which the violation grew." The court understood and properly applied the Act. We find that the convictions were proper even under *Park*.

This is so because

. . . the Government establishes a prima facie case when it introduces evidence sufficient to warrant a finding by the trier of the facts that the defendant had, by reason of his position in the corporation, responsibility and authority either to prevent in the first instance, or promptly to correct, the violation complained of, and that he failed to do so.

*Park*, 421 U.S. at 673–74, 95 S.Ct. at 1912, 44 L.Ed.2d at 502.

■ Only where the defendant offers to prove that he was "without the power or capacity to affect the conditions which founded the charges in the information," is there an additional burden placed upon the government. 421 U.S. at 676, 95 S.Ct. at 1913, 44 L.Ed.2d at 503.

■ Starr presents two contentions which arguably support an "objective impossibility" defense as to count one. *See Park*, 421 U.S. at 673, 677–78, 95 S.Ct. at 1912, 1914, 44 L.Ed.2d at 501, 503–04.[1] First, it is argued that the contamination resulted from a "natural phenomenon," the plowing of a nearby field, which in turn caused mice to flee that sanctuary and infest the warehouse. But the duty of "foresight and vigilance," 421 U.S. at 673, 95 S.Ct. at 1912, 44 L.Ed.2d at 501, requires the defendant to foresee and prepare for such an occurrence, whether it be deemed "natural" or "artificial." One with only a minimum of foresight would recognize that rodents and insects would flee from freshly plowed fields. Had this case been tried to a jury, these facts alone would not have compelled the giving of an "objective impossibility" instruction. Thus, we can scarcely say that the district court, as trier of fact, committed error by ignoring these facts to convict Starr and the corporation on count one.

■ Second, it is argued that the janitor, Marks, sabotaged the company, refused to comply with the officers' clean-up instructions, and allegedly brought new violations to the attention of the FDA inspector. However, there is no evidence of sabotage prior to the first inspection, on which count one was based.

Defendant Starr's objections to conviction on counts two and three focus on the alleged sabotage by Marks. The district court treated this issue as follows:

MR. McKRAY [defense counsel]: What about the action of the inspector and Mr. Marks, the janitor?

THE COURT: Those are matters in mitigation. You have got a substantial number of matters in mitigation that are already in the record.

MR. McKRAY: Well, isn't that really wrongful acts on the part of Mr. Marks, and a willful wrongful act?

THE COURT: Oh, but Mr. Starr cannot escape the fact that nearly a month transpired. He can't just delegate that to Mr. Marks, because that's his responsibility, really.

He can't delegate it and escape responsibility thereby. These are my findings.

From this colloquy it appears that the trial judge first thought the actions of Marks, which obviously frustrated to some degree efforts by Starr to correct the violations, were relevant only to the sentencing. However, when pressed by defense counsel, the trial court noted that "nearly a month transpired" between the reprimand of Marks and the second inspection.

■ This indicates to us the trial court's finding that Starr clearly could have taken additional steps to cure the violative

---

1. The "objective impossibility" defense was discussed in *United States v. Hata*, 535 F.2d 508 (9th Cir. 1976).

conditions by the time of the second inspection. The trial court's statement, "[Starr] can't just delegate that to Mr. Marks, because that's his [Starr's] responsibility," is a proper statement of the law. The standard of "foresight and vigilance" encompasses a duty to anticipate and counteract the shortcomings of delegees.

Here, the defendant himself testified that after reprimanding Marks at the time of the first inspection, he (Starr) never checked on Marks' progress. Starr did not learn of Marks' noncompliance until the time of the second inspection. On these facts, it is clear that Starr did not maintain "the highest standard of foresight and vigilance." Once having notified Marks of the need to correct the violations, Starr should have foreseen that, through neglect or design, Marks might fail to follow the orders given by Cheney and himself. Marks' actions or inaction were by no means wholly unforeseeable to Starr.

Starr testified: "I felt that if I had an employee [Marks], why [he] should be taking care of this. That is what I hired him for." Starr *expected* that Marks would obey his orders, but this is not to say that noncompliance was unforeseeable, for indeed it was not. Since Starr's sabotage argument would not on these facts compel the giving of an "objective impossibility" instruction on counts two and three in a jury trial, again we cannot say that the district court, as trier of fact herein, committed error in convicting Starr on counts two and three.

AFFIRMED.