ALLAN R. KUNIMOTO, JEAN M. KUNIMOTO, GEORGE T. NEKOTA, and MERLE H. NEKOTA, Petitioners, *v.* NORITO KAWAKAMI, Circuit Judge, First Judicial Circuit, and the STATE OF HAWAII, by its Attorney General, Respondents

NO. 5989

JANUARY 23, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

*Per Curiam.* In an original proceeding before this Court,[1] Allan R. Kunimoto, Jean M. Kunimoto, George T. Nekota and Merle H. Nekota, homeowners (petitioners), filed a Petition for Writ of Prohibition, seeking to prohibit the Honorable Norito Kawakami, circuit judge, first judicial court, the presiding judge, and the State of Hawaii (respondents) from taking further action in Civil No. 39967, a civil action in eminent domain instituted by respondent-State of Hawaii (State) against the petitioners.

In response to the petition, we issued an Alternative Writ of Prohibition forbidding the respondents from further prosecuting or otherwise taking any steps or proceedings in Civil No. 39967. The respondents were further ordered to show cause "why such prohibition should not be made perpetual".

For reasons stated hereinafter, the Alternative Writ is dissolved and the Petition for Writ of Prohibition is denied.

The petitioners contend as follows:

1. That the State has unlawfully instituted eminent domain proceedings for the condemnation of petitioners' lands, lands that are presently designated for residential use on the general plan[2] of the City and County of Honolulu, to expand

---

[1] HRS § 659-16; *but see* Section 3(j) and Section 4, Act 90, S.L.H. 1972.

*See* HRS § 602-5(4) (Supp. 1975).

[2] Section 5-408, Revised Charter, City and County of Honolulu, 1973, reads:

Section 5-408. *General Plan.* The general plan shall set forth the city's broad policies for the long range development of the city. It shall contain statements of the general social, economic, environmental and design objectives to be achieved for the general welfare and prosperity of the people of the city through government action, city, State or federal. The statements shall include, but not be limited to, policy and development objectives to be achieved with respect to the distribution of social benefits, the most desirable uses of land within the city, the overall circulation pattern and the most desirable population densities within the several areas of the city.

See also HRS § 46-4, which reads in part:

Zoning in all counties shall be accomplished within the framework of a long range, comprehensive general plan prepared or being prepared to guide the overall future development of the county. Zoning shall be one of the tools

the mauka-manoa campus of the University of Hawaii.

2. That Section 5-412.3, Revised Charter of the City and County of Honolulu, 1973 (Charter), provides in part:

No public improvement or project, or subdivision or zoning ordinance shall be initiated or adopted unless it conforms to and implements the development plan for that area. . . .[3]

a. That under Section 5-412.3, designation on the general plan of the City and County of Honolulu of real property sought to be condemned for the proposed public use and purpose is a required condition precedent to the initiation of a public improvement or project, including the acquisition of land by eminent domain proceedings in implementation thereof;

b. That said section applies to all public improvements or projects, and thus, the respondent-State is required to comply with the requirements of the section prior to instituting the herein eminent domain proceedings;

c. That the City Charter has the force and effect of general law and is "the organic law of the county".[4]

3. That respondent-Judge Kawakami is without in rem jurisdiction over the subject properties and over the eminent domain proceedings.

Respondents, however, contend, *inter alia,* the following:

1. That respondent-Judge Kawakami has jurisdiction over the subject properties and the proceedings in eminent domain;

___

available to the county to put the general plan into effect in an orderly manner. . . .

[3] Section 5-412.3, Revised Charter, City and County of Honolulu, 1973, reads:

3. No public improvement or project, or subdivision or zoning ordinance shall be initiated or adopted unless it conforms to and implements the development plan for that area. In case of a conflict between any federal aid project and the general plan or the development plans, the council, after public hearings, may set aside the general plan or development plans to the extent that such conflict prevents the obtaining or the granting of federal aid on any such project or the prosecution of the work thereunder.

[4] HRS § 50-10 reads in part:

Upon adoption, the charter shall become the organic law of the county and shall supersede any existing charter and all laws affecting the organization and government of the county which are in conflict therewith.

2. That Section 5-412.3 of the Charter is applicable to county public projects and is not intended to embrace State public projects;

3. That the power to select and locate school sites is reserved to the State Legislature.

In our opinion Section 5-412.3 of the Charter, in reference to the expansion of the campus of the University of Hawaii, is inapplicable. The Hawaii Constitution, in section 1, Article IX, clearly provides that it is the State's function "to provide for the establishment, support, and control of a statewide system of public schools . . . [and] a state university. . . ."[5]

In our opinion said section 1, Article IX, encompasses, among other things, the selection and location of public school and state university sites.

If there is any doubt as to the correctness of the above, the Legislature, under HRS § 27-1(1)[6] specifically places the responsibility of "planning, construction, improvement and maintenance of public school facilities and grounds" unto the State government.

Furthermore, on functions of statewide interest and concern, the general rule is that if the counties are not given specific authority to take over the function, the counties cannot thwart the State from performing its duty. *See City of Bloomfield v. Davis County Community School District*, 254

---

[5] Section 1, Article IX, Hawaii Constitution reads:

Section 1. The State shall provide for the establishment, support and control of a statewide system of public schools free from sectarian control, a state university, public libraries and such other educational institutions as may be deemed desirable, including physical facilities therefor. There shall be no segregation in public educational institutions because of race, religion or ancestry; nor shall public funds be appropriated for the support or benefit of any sectarian or private educational institution.

[6] HRS § 27-1(1) (Supp. 1975) reads:

§27-1 *Functions of statewide concern*. The purpose of the chapter is to fix responsibility for certain functions, which are of statewide concern, in the state government. These functions which are declared to be state functions are as follows:

(1) Planning, construction, improvement and maintenance of public school facilities and grounds and the transportation of school children; provided that nothing in this paragraph shall preclude the several counties from expending their own funds to supplement state funds.

Iowa 900, 119 N.W.2d 909 (1963); *City of Scottsdale v. Municipal Court of the City of Tempe*, 90 Ariz. 393, 368 P.2d 637 (1962); *State v. Ferriss*, 304 S.W.2d 896 (Mo. 1957); *Hilo Meat Co., Ltd. v. Antone*, 23 Haw. 675 (1917); 8 McQUILLIN, MUNICIPAL CORPORATIONS, §25.15 at 45 (3d ed. 1965). *See* HAW. CONST. art. VII, § 1; HRS § 50-15.

Though each political subdivision has the power to frame and adopt its own charter, the provisions in the charter must be limited to the self-government of the political subdivision and the provisions must further be within such limits and procedure as is prescribed by general law. HAW. CONST. art. VII, § 2.[7]

Thus, the State, in the instant case, is not required to conform with the provision of Section 5-412.3 and the respondent-Judge Kawakami has jurisdiction over the subject properties and the proceedings in eminent domain.[8]

We make it expressly clear that this opinion of the court does not deal with the question, to-wit: is Section 5-412.3 of the Charter inapplicable to all State public projects? It could very well be that the "balancing of interests" test stated in *Rutgers, The State University v. Piluso*, 60 N.J. 142, 286 A.2d 697 (1972) and *City of Temple Terrace v. Hillsborough Association for Retarded Citizens, Inc.*, 44 U.S.L.W. 2189 (Fla. Ct. App., 2d Dist., Oct. 10, 1975), is the appropriate test to apply in determining whether certain other State public projects fall within the provisions of Section 5-412.3 of the Charter.

---

[7] Haw. Const. art. VII, §2 reads:

Section 2. Each political subdivision shall have power to frame and adopt a charter for its own self-government within such limits and under such procedures as may be prescribed by general law.

[8] HRS § 101-10 reads:

§101-10 *Circuit courts have jurisdiction.* The circuit courts shall try and determine all actions arising under this part, subject only to an appeal to the supreme court in accordance with law. The court may on its own motion or on motion of any party try and determine any issue in the case in advance of other issues.

See also Act 155, Item E-24, S.L.H. 1969, wherein the expansion of the campus is authorized by the Legislature.

Of interest in this case is the fact that the establishment of a university on the subject properties, zoned R-4 residential district, is a permitted use under Section 21-531(a) of the Comprehensive Zoning Code of the county.

*Ted T. Tsukiyama* for petitioners.

*Edwin P. Watson,* Deputy Attorney General *(Ronald Y. Amemiya,* Attorney General, of counsel) for respondents.