STATE OF HAWAII, Plaintiff-Appellant, *v.* OTIS PETE BELL, Defendant-Appellee

NO. 6315

STATE OF HAWAII, Plaintiff-Appellant, *v.* DAVID ERNEST HISAW, Defendant-Appellee

NO. 6540

STATE OF HAWAII, Plaintiff-Appellant, *v.* MITCHELL G. CHANG, also known as Sonny, Defendant-Appellee

NO. 6910

DECEMBER 26, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

242

OPINION OF THE COURT BY OGATA, J.

These three consolidated appeals present the same underlying question: whether the prosecution is required to present to the grand jury evidence which tends to negate the guilt of the accused.

In the three cases before us, indictments were returned by the Oahu Grand Jury against each of the defendants. The defendants thereafter moved for dismissal of the indictments on the ground that evidence tending to negate their guilt was not presented by the prosecution to the grand jury. In Cases No. 6315 and 6540, Circuit Judge Doi dismissed the indictments without prejudice, while in Case No. 6910, Circuit Judge Lanham dismissed the indictment with prejudice. The State has appealed.

We reverse the dismissals of these three indictments. In our opinion, the prosecution is required only to present to the grand jury evidence which is clearly exculpatory in nature. Our holding will be explained and developed more fully as each of the three cases is described and analyzed individually.

I.    NO. 6315 — STATE v. BELL

In No. 6315, defendant Otis Pete Bell was indicted by the grand jury on charges of murder and carrying a firearm without a permit or license.

At the grand jury hearing, Michael O'Connell identified Bell as the person who shot and killed the victim, Calvin Silva. O'Connell stated, however, that he did not actually see Bell holding the gun because the victim was seated between Bell and O'Connell. O'Connell testified that he saw Bell approach the victim from behind, at which time O'Connell

heard gunshots and saw the victim immediately fall to the floor.

Honolulu Police Officer Michael Sensano testified at the grand jury hearing that while responding to a police radio report of the shooting, he spotted Bell walking in the vicinity of the murder scene. Sensano ordered Bell, who was holding an object in his hand, to stop, but Bell put the object into his pocket and fled. Bell was apprehended shortly thereafter by another police officer. The object recovered from Bell's pocket was found to be a pistol.

At a preliminary hearing held prior to the grand jury hearing, Michael Nash testified as a witness for the defense. Nash, who was present at the murder scene, testified that Bell was not the person who had shot Calvin Silva. Nash acknowledged at that hearing, however, that he had been under the influence of intoxicants at the time of the shooting and had been unable to give the police a specific and accurate account of the incident. The district court found Nash's testimony to be unreliable for purposes of the preliminary hearing, and it committed Bell to the circuit court to answer the charges.

Bell contends that the prosecution has a duty to present all material and relevant exculpatory evidence of which it is aware to the grand jury. He argues that the prosecution's purposeful failure to present Michael Nash as a witness at the grand jury hearing constitutes a fatal flaw in the indictment process, thus necessitating the dismissal of the indictment returned against him. The circuit court agreed with his contention and dismissed the indictment.

Initially, we note that the grand jury's responsibilities include both the determination of whether there is probable cause to believe that a crime has been committed and the protection of citizens against unfounded criminal prosecutions. *United States v. Calandra*, 414 U.S. 338, 343 (1974). We do not believe, however, that the fulfillment of these responsibilities requires that the grand jury have before it any and all evidence which might tend to exculpate the defendant.

As stated in *United States v. Calandra, supra*, at 343-44:
A grand jury proceeding is not an adversary hearing in

which the guilt or innocence of the accused is adjudicated. Rather, it is an *ex parte* investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person.

To require the prosecutor to present any and all information which may have a tendency to exculpate the accused would, in our view, confer upon grand jury proceedings the adversary nature which is more properly reserved for the actual trial phase of prosecution. *See United States v. Kennedy*, 564 F.2d 1329, 1338 (9th Cir. 1977), *cert. denied*, 435 U.S. 944 (1978).

Similar concerns have been expressed in M. Frankel and G. Naftalis, The Grand Jury 71 (1977):

> The rationale for not insisting on "defense" evidence is again related to presenting adversary proceedings in the grand jury room. In addition, determining what is or is not or may be exculpatory is often difficult. Evidence that does not appear to be terribly meaningful to a prosecutor preparing to present a case to the grand jury may take on altogether different significance when viewed from the standpoint of the defense counsel at trial. It might place an unmanageable burden on the prosecutor at this stage to require him to discern and disclose possible matters of exculpation.

The same authority has cited additional difficulties which may arise when an adversarial character is bestowed upon grand jury proceedings:

> The preliminary rehearsal of a trial in the grand jury room, but with counsel for only one side, entails dangers, or at least dubieties. Prospective defense witnesses may have their stories warped or colored unfairly in the grand jury room. It may be doubted that the average defense counsel would desire such an *ex parte* "rehearsal" of people he plans to call. Moreover, it is difficult enough as things stand to control the popular notion that a person indicted "must be guilty of something." The task is made more manageable by being able to remind trial jurors that the grand jury heard only the prosecutor's side. One may question the effects of a general understanding, however

much a distortion, that the grand jury actually heard both sides.
*Id.* at 129-30.[1]

We therefore do not think that to require all exculpatory evidence to be presented to the grand jury is, on balance, a requirement that will be of great benefit.

The difficulties cited above, however, do not arise where evidence of a *clearly* exculpatory nature is involved. We would require, therefore, that where evidence of a clearly exculpatory nature is known to the prosecution, such evidence must be presented to the grand jury. *See United States v. Mandel*, 415 F.Supp. 1033, 1042 (D. Maryland 1976). Clearly exculpatory evidence may be manifested, for example, by a witness whose testimony is not directly contradicted by any other witness and who maintains that the accused was nowhere near the scene of the crime when it occurred. Also, where it has become apparent to the prosecution, for example, that a sole eyewitness testifying as to the perpetration of the crime has perjured himself before the grand jury, that perjury must be revealed to the grand jury. The failure of the prosecutor to present such clearly exculpatory evidence to the grand jury would justify dismissal of the indictment. *See id.*

The federal courts have recognized that the prosecution is necessarily given wide discretion in presenting its case to the grand jury and that the prosecution is thus not required to present all exculpatory evidence to the grand jury. *United States v. Y. Hata & Co.*, 535 F.2d 508, 512 (9th Cir.), *cert. denied*, 429 U.S. 828 (1976); *see United States v. Narciso*, 446 F.Supp. 252, 296 (E.D. Mich. 1977); *United States v. Mandel*,

---

[1] A further discussion of the difficulties which can arise from the requirement that all evidence tending to negate guilt must be presented to the grand jury appears in Note, *The Prosecutor's Duty to Present Exculpatory Evidence to an Indicting Grand Jury*, 75 Mich. L. Rev. 1514, 1535-36 (1977), which is an article favoring implementation of the rule requiring presentation of exculpatory evidence.

The root of these difficulties lies in the inherently contradictory role which the prosecutor is asked to fulfill before the grand jury, thus making it unrealistic to expect that he will never attempt to select or present evidence which will favor his view of the case. *See id.* at 1535.

*supra* at 1040-42. Under the rule which defendant Bell espouses, the defense in every instance would be able to argue that certain evidence is exculpatory in nature and should be presented to the grand jury. Such a procedure would unnecessarily impinge on the prosecution's broad discretion and would inject confusion and delay into the grand jury indictment process.

Moreover, in our view, a defendant's right to due process would not be impinged where the prosecution is not required to present all exculpatory evidence to the grand jury. As stated, the grand jury phase is devoted only to a preliminary determination of whether criminal proceedings should be instituted against any person. The full trial phase — with its attendant evidentiary and procedural restrictions — still remains the actual adjudicatory stage of the guilt or innocence of the accused. As the court of appeals in *Hata, supra*, made clear:

> [T]he greatest safeguard to the liberty of the accused is the petit jury and the rules governing its determination of a defendant's guilt or innocence.

535 F.2d at 512. The ex parte nature of the grand jury is based upon "an abiding confidence in the jury trial system", *id.*, and we thus perceive no due process infirmity in continuing to afford the prosecution considerable latitude in determining whether to present evidence of an arguably exculpatory nature to the grand jury.

Defendant Bell's reliance upon *Johnson v. Superior Court*, 15 Cal. 3d 248, 539 P.2d 792, 124 Cal. Rptr. 32 (1975), is not persuasive. The California Supreme Court held in *Johnson* that the prosecutor is obligated to present to the grand jury all evidence of which the prosecutor is aware which reasonably tends to negate guilt.

However, the decision in *Johnson* was explicitly based on statutory grounds,[2] and the court in that case thus declined to

---

[2] The statute upon which the *Johnson* case was based was California Penal Code § 939.7, which provides:

The grand jury is not required to hear evidence for the defendant, but it shall weigh all the evidence submitted to it, and when it has reason to believe that other

consider the defendant's due process argument. In addition, by requiring the presentation to the grand jury of evidence "tending to negate guilt", the court in *Johnson* apparently utilized the language of the ABA Standards, *The Prosecution Function* § 3.6(b) (1971), which provides:

> The prosecutor should disclose to the grand jury any evidence which he knows will tend to negate guilt.

We decline to adopt the ABA approach for the same reasons enunciated in *United States v. Mandel, supra.* The court in *Mandel* seriously questioned whether it could in all instances be determined what evidence is sufficient to "negate guilt". The court went on to state:

> It would be an undue interference with the grand jury for a court to attempt to surmise what significance the grand jury would have attached to the testimony of various witnesses who were not called before it. Only in a case in which the evidence clearly would have negated guilt or undermined the authority of the grand jury to act at all should a court act. Otherwise, a court runs the risk of interfering too much with the grand jury process and does so largely on the basis of guessing what evidence a grand jury might have found persuasive.

415 F. Supp. at 1041-42.

In the instant case, Michael Nash's testimony that Bell was not the person who shot Calvin Silva arguably tended to negate Bell's guilt. However, Nash's testimony was not *clearly* exculpatory because one witness, Michael O'Connell, gave testimony which was directly contradictory to that of Nash. Furthermore, Nash himself added a colorable tinge to his own testimony by acknowledging that he was under the influence of intoxicants and was consequently unable to furnish the police with accurate and detailed information as to the events which had taken place. Under these circumstances, Nash's testimony was not clearly exculpatory, and the prosecutor was not required to present Nash's testimony

---

evidence within its reach will explain away the charge, it shall order the evidence to be produced, and for that purpose may require the district attorney to issue process for the witnesses.

to the grand jury.

Any other conclusion would require undue judicial interference with the grand jury's function, for in order to find that Bell was prejudiced by the failure to present Nash's testimony to the grand jury, we would have to find that inclusion of his testimony could have induced the grand jury not to return an indictment against Bell. Such conjecture as to the significance which the grand jury would have attached to testimony not presented to it would exceed this Court's supervisory authority over the grand jury system. *United States v. Chanen,* 549 F.2d 1306, 1313 (9th Cir.), *cert. denied,* 434 U.S. 825 (1977); *see United States v. Mandel, supra.*

We therefore reverse the dismissal of the indictment in No. 6315.

II.   NO. 6540 — STATE *v.* HISAW

In No. 6540, defendant David Ernest Hisaw was indicted for manslaughter. The victim, Scott Robert Ramo, was allegedly stabbed by Hisaw on the premises of a restaurant known as the "Country Meating", which is located in Wahiawa, City & County of Honolulu.

At a preliminary hearing held prior to the grand jury hearing, Wynelle Adaniya, a hostess at the Country Meating, was called as a witness by the State. Adaniya testified that Ramo and two other men chased Hisaw into the restaurant and that they shoved him up against a wall near the restaurant entrance. Adaniya further indicated that the three men accosted Hisaw and that Hisaw appeared to be frightened.

According to Adaniya, Hisaw broke away from the three men and ran farther into the restaurant. Two of the men — one of whom was Ramo — pursued Hisaw and cornered him. Adaniya testified that Hisaw faced the two men and, while holding a knife in his hand, told them, "Come and get me. I'm ready for you." At that point, however, Adaniya moved away from the doorway of the restaurant and was unable to further observe what took place inside the restaurant. A few moments later, she saw the three men who had been chasing Hisaw come out of the restaurant. The last of the three to

leave the restaurant was Ramo, who fell against a wall and then fell to the floor. Adaniya at that point noticed "a lot of blood" on Ramo's shirt.

Adaniya was not called as a witness before the grand jury. Hisaw objects to the prosecution's failure to call her as a witness, for he contends that her testimony was exculpatory in nature.

Another witness, Colin Walsh, who had been one of Hisaw's companions on the night of the stabbing, testified at a deposition held prior to the preliminary hearing that he, another male acquaintance, and Hisaw were unexpectedly attacked in a parking lot in Wahiawa and that some fights resulted. Walsh did not take part in the fights, nor did he know who had attacked him and his companions.

Walsh was not called as a witness at either the preliminary hearing or the grand jury hearing. Hisaw objects to the prosecution's failure to present Walsh's assertedly exculpatory testimony to the grand jury.

Karen Martinez, an employee of the Country Meating, did testify for the State at the grand jury hearing. Martinez was the only person testifying before the grand jury who witnessed the actual stabbing. According to Martinez, she saw three men backing Hisaw into the restaurant, and one of the men (Ramo) hit Hisaw two or three times. Hisaw, who had a "strap" in his right hand, then swung at Ramo. Martinez testified that Ramo looked down at his blood-soaked shirt and said to Hisaw, "You stabbed me". Ramo cussed at Hisaw and then turned around and walked toward the entrance of the restaurant, where he leaned against a wall and fell to the floor.

Hisaw further objects to the prosecution's failure to advise the grand jury as to the possibility of self-defense as a justification for his use of deadly force.[3] He claims that the

---

[3] Under the Hawaii Penal Code, Title 37, HRS, a person may be justified in using deadly force for self-protection. HRS § 703-304(2). Such justifiable use of force is a defense for which the burden of producing evidence is on the defendant. Commentary on HRS § 703-301. If the defendant produces such evidence, or if such evidence appears as part of the prosecution's case, the defendant is entitled to have the defense considered by the trial jury. *Id.* Hisaw apparently seeks to have these operative principles applied to the grand jury situation as well.

facts as presented to the grand jury, including the testimony of Karen Martinez, raise such a possibility of self-defense.

We first discuss Hisaw's objection to the prosecution's failure to present the testimony of Wynelle Adaniya and Colin Walsh to the grand jury. This objection may be simply disposed of, for the testimony of neither of these two witnesses was clearly exculpatory in nature.

Although it is true that Wynelle Adaniya's testimony at the preliminary hearing indicated that Hisaw was physically threatened by the victim and two other males, she did not actually see the stabbing take place. At the point at which she saw Hisaw turn toward the men who had cornered him and say, "Come and get me. I'm ready for you", Adaniya left her vantage point near the restaurant entrance. Therefore, the circumstances relating to the actual stabbing, which are crucial to a final determination as to whether Hisaw acted in self-defense, are not brought out by Adaniya's testimony.[4] Her testimony was thus not clearly exculpatory and need not have been presented to the grand jury.

The deposition testimony of Colin Walsh was even less exculpatory in nature than that of Wynelle Adaniya. Walsh testified only that he, another male and Hisaw were unexpectedly attacked in a Wahiawa parking lot by a few men. He did not identify any of the men who had attacked him, nor did he witness the stabbing. Therefore, although his testimony — like that of Adaniya — raises the spectre of physical violence directed at Hisaw prior to the stabbing, it does not *clearly* exculpate Hisaw on self-defense or any other grounds. The prosecution was thus not required to present Walsh's tes-

---

[4] HRS § 703-304(2) provides as follows:

The use of deadly force is justifiable under this section if the actor believes that deadly force is necessary to protect himself against death, serious bodily injury, kidnapping, rape, or forcible sodomy.

Adaniya's testimony does not clearly indicate that Hisaw's use of deadly force was justified under the terms of the above statute. She did not see whether Hisaw stabbed Ramo because the latter was advancing upon Hisaw, or whether perhaps it was Hisaw who took the offensive and attacked Ramo after being cornered. These circumstances are crucial to the determination of whether such facts existed as to justify the belief on the part of Hisaw that the use of deadly force was necessary in order to protect himself.

timony to the grand jury.

We now discuss Hisaw's contention that, given the state of the facts actually presented to the grand jury, the prosecution should nevertheless have instructed the grand jury as to the nature and significance of evidence relating to self-defense.[5]

The only direct authority which Hisaw relies upon is *People v. Ferrara*, 82 Misc.2d 270, 370 N.Y.S.2d 356 (Co. Ct. 1975). In *Ferrara*, it was held that where the evidence establishes an affirmative defense, the prosecution is required to instruct the grand jury as to the nature or importance of that evidence. However, in New York the district attorney is by statute the legal adviser of the grand jury and, as such, he "must instruct the grand jury concerning the law with respect to its duties or any matter before it". NYCPL § 190.25[6]. No similar statute or rule requiring the prosecutor to instruct the grand jury exists in Hawaii. Hence, we do not regard *Ferrara* as controlling.

We further reject Hisaw's attempt to construe § 6-703(d) of the Charter of the City and County of Honolulu (as revised) as a valid requirement that the prosecutor must instruct the grand jury regarding possible defenses. Section 6-703(d), which provides that the prosecuting attorney shall "attend before and give advice to the grand jury whenever cases are presented to it for its consideration", merely describes one of the city prosecutor's general functions and cannot affect the manner in which the grand jury investigatory and indictment process is to be conducted.[6]

---

[5] In positing this argument, Hisaw implicitly recognizes that the testimony of Karen Martinez did raise the possibility before the grand jury that Hisaw acted in self-defense.

[6] Generally, on matters of statewide interest and concern, such as the manner in which cases are presented to the grand jury, Honolulu and the other counties are not given specific authority to oversee or legislate with respect to that function. Therefore, although in this State local prosecutors conduct the bulk of prosecution work, the authority of the local governments does not extend to the direction of the fundamental procedures by which grand jury proceedings are to be conducted. *Cf. Kunimoto v. Kawakami*, 56 Haw. 582, 585, 545 P.2d 684, 686 (1976). Such governance of the grand jury system is more appropriately reserved for statutory and rule-made authority of statewide application.

We find no requirement that the grand jury should be instructed as to the nature and significance of evidence relating to self-defense whenever evidence arguably raising that defense is presented to the grand jury. We do believe, however, that in fairness to the accused, whenever the evidence presented to the grand jury *clearly* establishes that the accused acted in self-defense, a proper instruction on the significance of that evidence should be presented to the grand jury.

Here, although the testimony of Karen Martinez raised the possibility of self-defense, it did not clearly establish that defense. Hence, we reverse the dismissal of the indictment in No. 6540.

### III. NO. 6910 — STATE *v.* CHANG

In No. 6910, the grand jury indicted defendant Mitchell G. Chang for burglary in the first degree. Chang had allegedly identified himself as a police officer in order to gain entry to a private residence. Once inside the residence, he began to grab at the victim, who was alone in the house at the time. The victim managed to break away from the defendant's grasp and flee the premises.

The victim was subsequently taken to the police station for further investigation of the incident. As the police car in which she was riding neared the police station, the victim spotted the defendant by chance and identified him as the person who had entered her home and assaulted her. However, at a later lineup, the victim identified a different person as the culprit.

The person identified by the victim at the lineup was some three inches taller and forty-five pounds heavier than the defendant. There was, however, some indication from testimony adduced at a preliminary hearing that the victim was wearing shoes at the lineup which increased her height by approximately three to four inches, and that she was also tired when viewing the lineup.

At a grand jury hearing held on January 5, 1977, the prosecution did not inform the grand jury of the victim's

misidentification at the lineup. The indictment returned on that date against the defendant was quashed without prejudice by the circuit court due to the prosecution's failure to inform the grand jury of the misidentification.

Subsequently, on December 7, 1977, Chang was again indicted by a different grand jury on the identical charge of burglary in the first degree. However, the prosecution failed again to inform this second grand jury about the victim's lineup misidentification, and the circuit court dismissed the indictment with prejudice. This dismissal is the subject of the instant appeal.

Although when it dismissed the original indictment the circuit court did not specify that the State was required, in the event that it chose to reindict the defendant, to inform the grand jury of the victim's misidentification, the court felt that such a requirement was clearly implied. The circuit court concluded that the failure of the State to notify the grand jury of the misidentification violated the requirement that an indictment be returned by an unprejudiced grand jury.

The conclusion reached by the circuit court was based primarily on *State v. Joao*, 53 Haw. 226, 491 P.2d 1089 (1971), in which this Court held that the prosecutor's comments to the grand jury regarding a witness's motivation in testifying were prejudicial to the defendant's constitutional right to a fair and impartial grand jury proceeding. In the instant case, the circuit court viewed the failure of the prosecution to notify the first and second grand juries of the misidentification as being misleading to the grand juries in their evaluation of all the evidence presented to them.

We have already stated that the prosecution is not required to present exculpatory evidence to the grand jury unless that evidence is *clearly* exculpatory. The victim's failure to identify Chang at the lineup is not clearly exculpatory, for the fact remains that the victim still positively identified Chang outside the police station.

The victim's lineup misidentification reflects upon her ability to recognize her assailant, however, and it ultimately reflects upon her credibility in general. Nevertheless, we remain satisfied that the prosecution is not required to pro-

duce before the grand jury all evidence which may tend to undermine the credibility of the witnesses presented. *Loraine v. United States,* 396 F.2d 335, 339 (9th Cir.), *cert. denied,* 393 U.S. 933 (1968).

As stated in *People v. Filis,* 87 Misc.2d 1067, 386 N.Y.S.2d 988 (Sup. Ct. 1976), the prosecutor is accorded wide discretion in the manner of presenting his case to the grand jury.

> He need only select those witnesses and those facts which most expeditiously establish a prima facie case. He is under no duty to present all of his evidence or engage in a dress rehearsal of his case.

*Id.* at 1069, 386 N.Y.S.2d at 989.

In *Filis, supra,* the victim's wife originally reported that she saw "a man" shoot her husband. She later testified that she saw certain specific men commit the homicide. The court held that the fact that a witness gives conflicting testimony does not taint the grant jury's factfinding role, nor does it necessitate the conclusion that the grand jury's ultimate determination could logically be different. The court stated that the conflicting testimony of a witness is a matter to be resolved during trial when all the circumstances surrounding that testimony may be thoroughly explored by both sides. It thus refused to dismiss the indictment for the failure of the prosecution to inform the grand jury of the inconsistent statements made by the witness.

A similar result was reached in *United States v. Brown,* 574 F.2d 1274 (5th Cir. 1978), in which the prosecution failed to advise the indicting grand jury that the witness had given inconsistent statements to another grand jury. The court in *Brown* held that the prosecution "is under no duty to present to a grand jury evidence bearing on the credibility of witnesses." *Id.* at 1276. The court recognized that the defendant was accorded every opportunity to present the inconsistent statements to the trial jury, and that he in fact did so. Therefore, no prejudice to the defendant was deemed to have resulted.

We adhere to the results reached in both *Filis* and *Brown, supra,* and we hold that the prosecution in the instant case

was not required to produce before the grand jury evidence which may have tended to undermine the victim's credibility. The defense is free to present at trial evidence as to the victim's lineup misidentification, the significance of which the trial jury would be at liberty to resolve once and for all. *Brown, supra.*

Furthermore, we are not convinced of the propriety of the circuit court's finding that had the prosecution informed the grand jury of the victim's misidentification, the grand jury "might well have declined to indict" defendant Chang. Therefore, we do not agree that *State v. Joao, supra,* requires dismissal of the indictment.[7]

We are unable to conclude that the circuit court was correct in attempting to postulate in the first place what the grand jury might have concluded if the misidentification information had been presented to it. As we have established herein, it would be an undue interference for a court to attempt to surmise what significance a grand jury would have attached to testimony of witnesses *not* called before it. We would attach the same conclusion to other evidence of less than clearly exculpatory nature as well. *United States v. Mandel, supra.* Only where the evidence would have clearly negated the defendant's guilt should a court find that the defendant has been unfairly prejudiced.

Moreover, we are impressed by the fact that even if a court were able to find that a grand jury may or may not have decided to indict had certain information been made known to it, the information involved in this case certainly by no means compels a finding that the grand jury would have chosen not to indict if that information had been presented to it. The fact of misidentification merely raises a question as to the victim's ability to identify Chang, but it in no way clearly exculpates the defendant. The lineup misidentification is an issue which

---

[7] In *Joao,* the circuit court reached a finding that the grand jury "might not have returned an indictment" if the prosecution had not made its statement bolstering the credibility of the State's witness. Such a finding was deemed by this Court to have established a tendency to prejudice, and we thus affirmed the quashing of the indictment.

the defense could freely explore during the trial itself, and we thus perceive no unfairness or prejudice as a result of the prosecution's actions.

The victim's testimony in this case was not clearly exculpatory. We consequently reverse the dismissal of the indictment in No. 6910.[8]

Cases No. 6315, 6540 and 6910 are hereby remanded to the circuit court for trial.

*Arthur E. Ross,* Deputy Prosecuting Attorney, for Plaintiff-Appellant.

*David C. Schutter (Schutter, O'Brien & Weinberg* of counsel) for Defendants-Appellees.

## CONCURRING OPINION OF KIDWELL, J.

I concur in the result reached by the court in these cases. However, in announcing that indictments may be attacked for failure of the prosecutor to present to the grand jury evidence which is "clearly exculpatory" the opinion fails to provide adequate guidance and proposes a standard which is open to varying interpretation. The rationale of the opinion dictates a more restrictively defined standard. I add these remarks to indicate what I believe to be the criteria which should govern.

The opinion confirms that a grand jury proceeding is not adversary in nature. An application of this principle is found in the rule that an indictment may not be attacked on the ground of the incompetency of the evidence considered by the grand jury, where prosecutorial misconduct is not involved. *State v. Layton,* 53 Haw. 513, 497 P.2d 559 (1972); *United States v. Calandra,* 414 U.S. 338 (1974). The function of a

---

[8] Although the prosecutor's failure to inform the second grand jury of the misidentification was in fact procedurally suspect in view of the circuit court's explicit reasons for dismissing the original indictment, we do not believe that such prosecutorial action (or inaction) was sufficient to warrant dismissal of the second indictment. The circuit court was free to reprimand the prosecutor who handled the second grand jury hearing, but it should not have gone so far as to have dismissed the indictment.

grand jury to protect against unwarranted prosecution does not entail a duty to weigh the prosecution's case against that of the defense, or even to determine that the prosecution's case is supported by competent evidence.

On the other hand, an indictment that is the result of prosecutorial misconduct or other circumstances which prevent the exercise of fairness and impartiality by the grand jury may be successfully attacked. *State v. Joao*, 53 Haw. 226, 491 P.2d 1089 (1971); *State v. Pacific Concrete and Rock Co.*, 57 Haw. 574, 560 P.2d 1309 (1977). I view the opinion as equating the withholding of clearly exculpatory evidence with prosecutorial misconduct in the context of these decisions. The criteria by which clearly exculpatory evidence is to be identified should accordingly be determined with reference to the prosecutor's function.

The conclusions reached in the cases here before the court make it clear that the prosecutor's function does not include the presentation of the potential defense to the grand jury. While not precluded from presenting conflicting evidence to the grand jury, the prosecutor need ordinarily present only the evidence which supports the prosecution's case. At least where the prosecutor may in good faith choose to rely upon a version of the facts supported by evidence, the decisions in these cases demonstrate that he need not also present to the grand jury another version which tends to negate guilt.

The opinion suggests, as examples of situations in which clearly exculpatory evidence is required to be presented to the grand jury, instances in which evidence which is not directly contradicted places the accused away from the scene of the crime or shows that a witness has perjured himself. Each of the examples presents a situation in which the withholding of the evidence may be viewed as deliberately misleading the grand jury. Since the evidence in question is uncontradicted, the hypothetical case is necessarily one in which guilt depends on circumstantial evidence. I see as the unstated premise of the examples the proposition that a prosecutor may not, in his presentment to the grand jury, build a circumstantial case upon only a part of the circumstances which the prosecution must acknowledge to be existing, and

is under a duty at least to acquaint the grand jury with all of the relevant circumstances which he expects the evidence to show if all conflicts are resolved in favor of the prosecution. I agree with this proposition, but question whether this court can so clearly foresee all possible circumstances that an unvarying rule can be stated to govern cases of the sort dealt with in the examples. Where the prosecutor can in good faith assert that the exculpatory evidence is contradicted by circumstantial evidence of guilt, I would not treat the case as different in principle from one in which the exculpatory evidence is directly contradicted by an eye witness.

I conclude that evidence should be considered clearly exculpatory within the meaning of the opinion only when the prosecution could not in good faith rely on other evidence. My approach is consistent with what I believe to be the underlying assumptions in the opinion of the court. While I am unable to join in the opinion, my concern is with respect to expressions which are extraneous to the decision of the cases before the court. The precise application in other cases of the principle for which I believe that the opinion stands is a matter for future determination.