**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000678
26-JAN-2024
08:25 AM
Dkt. 183 SO**

NO. CAAP-21-0000678

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
JOSHUA PULLIAM, Defendant-Appellee,
and ISAIAH MCCOY, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1CPC-19-0001279)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and Nakasone, JJ.)

Defendant-Appellant Isaiah McCoy (**McCoy**) appeals from the October 26, 2021 Judgment of Conviction and Sentence Notice of Entry (**Judgment**) entered by the Circuit Court of the First Circuit (**Circuit Court**)[1] in favor of Plaintiff-Appellee, the State of Hawaiʻi (**State**). On September 5, 2019, McCoy was indicted on one count of Robbery in the Second Degree in violation of Hawaii Revised Statutes (**HRS**) § 708-841(1)(a) (2014).[2] On May 3, 2021, a jury found McCoy guilty as charged.

---

[1]     The Honorable James S. Kawashima presided.

[2]     HRS § 708-841 provides, in pertinent part:

  **§ 708-841  Robbery in the second degree.**  (1) A person commits the offense of robbery in the second degree if, in the course of committing theft or non-consensual taking of a motor vehicle:

(continued...)

On August 3, 2021, McCoy was sentenced to a maximum term of ten years imprisonment and was ordered to pay restitution in the amount of $6,256.64.

McCoy raises seven points of error on appeal, contending that the Circuit Court:  (1) abused its discretion by increasing bail from $20,000.00 to $100,000.00, revoking bail altogether, and denying McCoy's requests to reinstate bail while jury trials were suspended due to the COVID-19 pandemic; (2) erred in not suppressing field show-up evidence; (3) abused its discretion in denying McCoy's motion to dismiss his indictment (**Motion to Dismiss**); (4) erred in denying McCoy's motion to allow a key mainland witness to testify at trial virtually; (5) erred in denying McCoy's motion for judgment of acquittal based on insufficient evidence; (6) erred in denying McCoy's various requests for jury instructions; and (7) abused its discretion in sentencing McCoy to a ten-year prison term while co-defendant Joshua Pulliam (**Pulliam**) was given probation.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve McCoy's arguments as follows:

(1) McCoy argues that the Circuit Court abused its discretion in setting McCoy's bail at $100,000 after McCoy's

---

[2](...continued)

    (a)    The person uses force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance[.]

. . . .

    (2)    Robbery in the second degree is a class B felony.

indictment,[3] rather than maintaining McCoy's bail at the lower amount that was set upon McCoy's arrest. We conclude, however, that this issue is moot because the bail in question was revoked, upon the State's motion, after McCoy was arrested at the airport for attempting to flee Hawaiʻi. The Circuit Court found, after an October 10, 2019 evidentiary hearing, that McCoy intentionally violated the bail condition that he may not leave the jurisdiction.

McCoy also argues that the Circuit Court erred when it denied a motion for reinstatement of bail following a November 15, 2019 hearing. First, the premise of this argument is wrong as it appears that his eligibility for bail was reinstated prior to that hearing, and McCoy's complaint in fact relates to the amount of bail he was required to post. McCoy contends that he provided ample testimony that, although he had been arrested while trying to board a plane to Los Angeles, he had attempted to seek permission from his bail bondsman ahead of time. It appears that he contends that this "attempt to seek permission" entitled him to a lower bail. This contention is without legal support and without merit.

In addition, McCoy contends that the Circuit Court abused its discretion and erred because the circumstances of the COVID-19 Pandemic warranted reinstating his bail, citing *In re Individuals in Custody of State*, SPCW-21-0000483, 2021 WL 4762901, *22 (Haw. Oct. 12, 2021) (McKenna, J., concurring and dissenting in part). However, the Hawaiʻi Supreme Court in *In re*

---

[3] The Honorable Shirley M. Kawamura presided.

Individuals in Custody of State held that, regardless of the pandemic, trial courts retained discretion in setting bail and imposing conditions on release and that the pandemic was not enough to permit the release of all detainees who did not pose a risk to public safety or flight.  2021 WL 4762901, at *4, *5.  As McCoy makes no particularized argument regarding his circumstances during the pandemic based on the record in this case (or otherwise), we conclude that this contention is without merit.

(2)  McCoy contends that the Circuit Court erred in denying his motion to suppress the field show-up identification of McCoy by two witnesses.

In State v. Kaneaiakala, 145 Hawaiʻi 231, 450 P.3d 761 (2019), the supreme court held:

> A defendant is denied due process of law when the procedure used to obtain an eyewitness identification admitted at trial is unnecessarily suggestive and conducive to irreparable mistaken identification.  We have held, however, that an eyewitness identification is not inadmissible merely because the identification procedure was impermissibly suggestive.  Rather, whether an eyewitness identification obtained through an impermissibly suggestive procedure is admissible depends upon the reliability of the identification.

145 Hawaiʻi at 240, 450 P.3d at 770 (citations and internal quotation marks omitted).

The supreme court held that trial courts must consider the same thirteen factors as set forth for jurors (in Hawaiʻi Standard Jury Instructions, Criminal (**HAWJIC**) 3.19)) when evaluating the reliability of challenged eyewitness identifications for admissibility purposes:

> [T]rial courts must, at minimum, consider any relevant factors set out in [HAWJIC] governing eyewitness and show-up identifications, as may be amended, as well as

4

> any other relevant factors that may be set out in binding precedent in addressing whether, under a totality of circumstances, an impermissibly suggestive eyewitness or show-up identification is nonetheless sufficiently reliable to be admissible in evidence.

Kaneaiakala, 145 Hawaiʻi at 247, 450 P.3d at 777.

> Specifically, the trial judge must consider:

> > (1) The opportunity of the witness to observe the person involved in the alleged criminal act; (2) the stress, if any, to which the witness was subject at the time of the observation; (3) the witness's ability, following the observation, to provide a description of the person; (4) the extent to which the defendant fits or does not fit the description of the person previously given by the witness; (5) the cross-racial or ethnic nature of the identification; (6) the witness's capacity to make an identification; (7) evidence relating to the witness's ability to identify other participants in the alleged criminal act; (8) whether the witness was able to identify the person in a photographic or physical lineup; (9) the period of time between the alleged criminal act and the witness's identification; (10) whether the witness had prior contacts with the person; (11) the extent to which the witness is either certain or uncertain of the identification and whether the witness's assertions concerning certainty or uncertainty are well-founded; (12) whether the witness's identification is in fact the product of his/her own recollection; and (13) any other evidence relating to the witness's ability to make an identification.

Id. at 243, 450 P.3d at 773 (format altered).

The supreme court further held that "[t]o counteract possible effects of suggestive procedures on reliability, . . . trial courts must also consider the effect of the suggestiveness on the reliability of the identification in determining whether it should be admitted into evidence." Id. at 248, 450 P.3d at 778.

Here, the State acknowledged in the proceedings before the Circuit Court (and again on appeal) that the field show-up was impermissibly suggestive. The Circuit Court began its analysis there, and then assessed the reliability of the eyewitness identification utilizing each of the thirteen factors set forth above, and reviewed whether the factor weighed in favor

of granting or denying McCoy's motion to suppress (or neither). The Circuit Court further considered the effect of the suggestiveness of the identification procedure on the reliability of the subject identifications in determining whether they should be admitted.  After weighing all of its findings and applying them to the Kaneaiakala factors, the Circuit Court concluded that both Officer Enoka Lucas's and complaining witness Hideaki Shibata's (**Shibata's**) identification of McCoy were sufficiently reliable and worthy of presentation to the jury at trial, and accordingly denied McCoy's motion to suppress identification.

The Circuit Court considered and weighed the factors affecting reliability, considered the effects of the suggestive identifications, reviewed the totality of circumstances, and concluded that the identifications should not be suppressed. Upon our own review of the above and the record of the suppression hearing, and the unchallenged findings in the order denying suppression, we conclude that the Circuit Court did not err in denying McCoy's motion to suppress.

(3)  McCoy argues on appeal that the Circuit Court erred by denying his motion to dismiss his indictment because the prosecution withheld the following exculpatory evidence:  McCoy did not physically take the watch; Shibata suffered only minor injuries; McCoy's co-defendant, Pulliam, was the initial aggressor; and after the initial altercation, Shibata followed McCoy and Pulliam and reinitiated the altercation.

It is well established that, when presenting its case to a grand jury, the State must present any clearly exculpatory

evidence that is known to the prosecution.  State v. Bell, 60 Haw. 241, 245, 589 P.2d 517, 520 (1978) (emphasis added); see also Hawaiʻi Rules of Penal Procedure Rule 6(f).  However, the State is not required to present any and all evidence "which may have a tendency to exculpate the accused[.]"  Bell, 60 Haw. at 244, 589 P.2d at 519.

With respect to exculpatory evidence, McCoy's December 10, 2020 Motion to Dismiss Indictment argued that there was evidence that Shibata did not know who (McCoy or Pulliam) took the watch off Shibata's wrist.  McCoy's Renewed Motion to Dismiss for Prosecuting Attorney Misconduct argued that evidence not shown to the grand jury demonstrated that Shibata "was not seriously injured."

McCoy's arguments concerning exculpatory evidence that were not raised in his motions to the Circuit Court are waived.  See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4).

In any case, upon review, we conclude that none of the purported evidence was clearly exculpatory, and the Circuit Court did not err in denying McCoy's motion to dismiss the indictment.

(4)  McCoy argues that the Circuit Court erred in denying his request to allow a bouncer named Shawn John Leroy (**Leroy**) testify virtually at trial.  Leroy had relocated to the mainland.  McCoy did not obtain an affidavit or declaration from Leroy describing what he would have said at trial.  McCoy contends that this "should be of no consequence" because Leroy's testimony would have been the same as the testimony of McCoy's

girlfriend, *i.e.*, that Shibata was severely inebriated and had gotten kicked out of a nightclub just prior to the incident.

This argument is not supported by the record on appeal. McCoy has not carried his burden to show that the Circuit Court erred or abused its discretion in denying his request to allow Leroy to testify virtually.

(5) McCoy argues that the evidence was insufficient to support his conviction of Robbery in the Second Degree as it failed to evince his intent to aid Pulliam in taking Shibata's watch. The State counters that there was sufficient circumstantial evidence that McCoy intended to aid Pulliam as an accomplice.

A person is liable as an accomplice if they "'act with the intent of promoting or facilitating the commission of the crime,'" State v. Lauvao, CAAP-19-0000666, 2022 WL 4114487, *12 (Haw. App. Sept. 9, 2022) (mem. op.) (quoting State v. Soares, 72 Haw. 278, 282, 815 P.2d 428, 430 (1991)), but mere presence alone "does not make a person an accomplice to that offense," id. (quoting State v. Acker, 133 Hawaiʻi 253, 286, 327 P.3d 931, 964 (2014)). See HRS § 702-222 (2014).

Shibata testified, *inter alia*, that two men (identified as McCoy and Pulliam) both attacked him, he was pretty badly beaten, and his watch was taken. Shibata testified that he was kicked and punched by both, but he did not remember exactly which guy hit him how many times, and Pulliam took the watch. Viewing the evidence in the strongest light for the prosecution, we

conclude that there was substantial evidence to support McCoy's conviction.

(6) McCoy argues that the Circuit Court erred in instructing the jury with respect to accomplice liability based on HAWJIC 6.01 rather than or to the exclusion of an instruction crafted by McCoy. Upon review, we conclude that the Circuit Court correctly informed the jury, in understandable terms, what the jury needed to find in order to conclude that accomplice liability applied to this case. McCoy fails to cite any authority supporting his claim that his instruction was required in this case.

McCoy further argues that the Circuit Court erred with respect to its instruction that the jury should not consider statements, arguments, or actions of the lawyers presenting, but did not give a similar instruction to disregard McCoy's non-testimonial statements, arguments, and actions while acting as his own lawyer. McCoy points to no particular incident or circumstance warranting a further instruction of this nature. McCoy cites no authority requiring a separate instruction specifically regarding a self-represented party's demeanor when acting in the role of a self-advocate and, upon review, we decline to conclude that failure to give such an instruction rendered the jury instructions in this case to be prejudicially insufficient, erroneous, inconsistent or misleading.

Finally, McCoy argues that the Circuit Court plainly erred in failing to further instruct the jury to clarify that the offense of Theft in the Fourth Degree was an appropriate lesser-

included offense.  Upon review, neither of the instructions referenced by McCoy were wrong, and McCoy's argument that when read together they are prejudicially insufficient, erroneous, inconsistent or misleading is unsupported by legal authority or the record in this case.

(7) In his final point of error, McCoy challenges his sentence.  McCoy argues that the Circuit Court abused its discretion by imposing a harsher sentence on him than Pulliam. McCoy further argues that the Circuit Court disregarded his version of the events at the airport, that his "poor jail performance" was due to a lack of medical treatment, and that he was an "exemplary bailee."  McCoy also argues that his harsher sentence was due to his zealous *pro se* advocacy.

Robbery in the Second Degree is a class B felony, subject to an indeterminate maximum term of ten years.  HRS § 706-660(1)(a) (2014).[4]  When imposing a sentence, a trial court must consider:

> (1)  The nature and circumstances of the offense and the history and characteristics of the defendant;

---

[4]  HRS § 706-660 provides, in pertinent part:

**§ 706-660  Sentence of imprisonment for class B and C felonies; ordinary terms; discretionary terms.** (1)  Except as provided in subsection (2), a person who has been convicted of a class B or class C felony may be sentenced to an indeterminate term of imprisonment except as provided for in section 706-660.1 relating to the use of firearms in certain felony offenses and section 706-606.5 relating to repeat offenders.  When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:
    (a)  For a class B felony--ten years[.[
        . . . .
The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706-669.

(2)    The need for the sentence imposed:
    (a)   To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
    (b)   To afford adequate deterrence to criminal conduct;
    (c)   To protect the public from further crimes of the defendant; and
    (d)   To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    The kinds of sentences available; and

(4)    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

HRS § 706-606 (2014).

The weight given to each of these factors may not be uniform and is left to the discretion of the sentencing court. State v. Kong, 131 Hawaiʻi 94, 101, 315 P.3d 720, 727 (2013).

At McCoy's sentencing, the Circuit Court explained that it looked not only at the HRS § 706-606 factors, but also at the factors to be considered in imposing a term of probation, which are set forth in HRS § 706-621 (2014).[5]  The court found that

---

[5]    HRS § 706-621 provides:

**§ 706-621  Factors to be considered in imposing a term of probation.**  The court, in determining whether to impose a term of probation, shall consider:

(1)    The factors set forth in section 706-606 to the extent that they are applicable;

(2)    The following factors, to be accorded weight in favor of withholding a sentence of imprisonment:
    (a)   The defendant's criminal conduct neither caused nor threatened serious harm;
    (b)   The defendant acted under a strong provocation;
    (c)   There were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
    (d)   The victim of the defendant's criminal conduct induced or facilitated its commission;
    (e)   The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime;
    (f)   The defendant's criminal conduct was the result of circumstances unlikely to recur;
    (g)   The character and attitudes of the defendant indicate that the defendant is unlikely to commit another crime;

(continued...)

almost none of the factors supporting probation were satisfied in this case. The Circuit Court noted that it was unclear whether McCoy's conduct was a result of circumstances that were likely or unlikely to recur, but that all of the other considerations weighed against probation. In addition, the court noted that beyond that, the court considered how McCoy behaved on supervised release, that "if past is prolog [sic]," the court anticipated numerous small violations, failures to appear, and the like. The court pointed to McCoy's disregard of prior release conditions including not going to Waikiki, not leaving the State, and then going to the airport after being told not to leave the State. The Circuit Court noted the seriousness of the offense and the horrific circumstances. The Circuit Court also noted its review of the presentence investigation report, including McCoy's prior record, acknowledging that the prior convictions were more than ten years earlier. The court reiterated the lack of circumstances supporting a probation sentence for McCoy.

With respect to the disparate sentencing argument, McCoy and Pulliam were both found guilty of Robbery in the Second Degree for the incident involving Shibata. However, at Pulliam's sentencing hearing, the Circuit Court noted factors supporting sentencing Pulliam to probation. McCoy does not argue that he,

---

⁵(...continued)

| | | |
|---|---|---|
| (h) | The defendant is particularly likely to respond affirmatively to a program of restitution or a probationary program or both; | |
| (i) | The imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents; and | |
| (j) | The expedited sentencing program set forth in section 706-606.3, if the defendant has qualified for that sentencing program. | |

too, satisfied those probation factors. "[A] disparity among defendants' sentences does not establish that any particular defendant's sentence is excessive." State v. Kahapea, 111 Hawaiʻi 267, 281, 141 P.3d 440, 454 (2006) (citation and brackets omitted).

McCoy points to nothing in the record to support his argument that his sentence was due to his zealous self-advocacy. McCoy's assertion that he was an "exemplary bailee" is equally unsupported by the record in this case.

We conclude that McCoy's argument that the Circuit Court "acted wholly in an arbitrary and capricious manner" here is without merit, even in light of the difference in the sentences imposed on McCoy and Pulliam. We conclude that the Circuit Court did not abuse its discretion in sentencing McCoy to an indeterminate ten-year term of imprisonment.

For these reasons, the Circuit Court's October 26, 2021 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, January 26, 2024.

On the briefs:

Kai Lawrence,
(Kai Law LLC),
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge