949 P.2d 130

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Damien CHONG, also known as Damien Suzukawa, Defendant–Appellee,**

and

**Shigemi Suzukawa, Defendant.**

**No. 18255.**

Intermediate Court of Appeals of Hawai'i.

April 30, 1997.

Donn Fudo, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs for plaintiff-appellant.

Peter Van Name Esser and Myles S. Breiner, Honolulu, on the brief for defendant-appellee.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

WATANABE, Judge.

We conclude that the First Circuit Court (circuit court) abused its discretion when it dismissed the indictment against Defendant–Appellee Damien Chong, also known as Damien Suzukawa, (Defendant) because the State of Hawaiʻi (the State) had given each witness who testified before the grand jury (1) the questions which would be asked of the witness during the grand jury proceeding, and (2) the anticipated responses of the witness as gleaned from the witness's prior statements or reports. (These questions and answers will hereafter be referred to as "predicate questions and answers.")

Accordingly, we reverse the circuit court's May 24, 1994 "Decision and Order Granting Defendant's Motion to Dismiss Indictment Without Prejudice" (Dismissal Order) and remand for further proceedings.

## BACKGROUND

On June 23, 1993, Defendant was indicted by a grand jury and charged with (1) Promoting a Dangerous Drug in the Second Degree, in violation of Hawaiʻi Revised Statutes (HRS) § 712–1242(1)(b) (1993)[1] (Count I); (2) Unlawful Use of Drug Paraphernalia, in violation of HRS § 329–43.5(a) (1993)[2] (Counts II and IV); and (3) Promoting a Dangerous Drug in the Third Degree, in

---

1. Hawaiʻi Revised Statutes (HRS) § 712–1242(1)(b) (1993) provides, in pertinent part, as follows:

**Promoting a dangerous drug in the second degree.**
    (1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:
    * * *
    (b) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:
      (i) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers; or
      (ii) One-fourth ounce or more, containing any dangerous drug[.]

2. HRS § 329–43.5(a) (1993) provides as follows:

**Prohibited acts related to drug paraphernalia.**
    (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

violation of HRS § 712–1243 (1993)[3] (Count III).

On January 5, 1994, Defendant filed a "Motion to Compel Discovery, or in the Alternative Motion to Dismiss Indictment with Prejudice," seeking to compel the State to produce "Grand Jury predicate questions." Following a February 3, 1994 hearing on the motion, the circuit court granted the motion and ordered the State to "provide [Defendant] with all Grand Jury witness predicate questions and answers no later than February 11, 1994."

Thereafter, on February 15, 1994, Defendant filed a "Motion to Dismiss Indictment With Prejudice Due to Prosecutorial Misconduct" (Motion to Dismiss Indictment). In an affidavit attached to the motion, Defendant's counsel stated, in relevant part, as follows:

2. That the Prosecution prepared specific questions and answers for each witness who testified before the Grand Jury, and in so doing committed prosecutorial misconduct by usurpating [sic] the Grand Jury's independent function . . . ;

3. That on February 3, 1994, [a deputy prosecutor] informed the Court that the Grand Jury witnesses in the [instant] case were provided with specific answers in order to speed up the Grand Jury process, because "we try to make it as quick as possible" . . . ;

5. That based on [the deputy prosecutor's] statements before [a circuit court judge], the Grand Jury witnesses did not testify to an independent recollection of the facts and events giving rise to the instant indictment . . . ;

6. That according to [the deputy prosecutor]: "What we want to do is pull out the key things, bring their attention to it, and then have them say that in response to the questions so that the Grand Jury will go quick because often we have a lot of grand juries set for one day."

7. That the Grand Jury was presented with witnesses who were effectively testifying to the prosecution's view of the facts

and case, and not their own independent recollection of the crime[;]

8. That the prosecution effectively mislead [sic] the Grand Jury by scripting the individual testimony of each witness[.]

On May 24, 1994, the circuit court issued its Dismissal Order, which stated, in relevant part:

Deputy Prosecuting Attorney Keith Seto was assigned the instant case and prepared the questions and answers for the witnesses.

Deputy Prosecuting Attorney Bryan Sano substituted for Deputy Seto and presented the case to the grand jury. Deputy Sano testified that, if the case is not his, he usually makes an extra effort to have the witnesses review the answers. He tells them to testify correctly. In his experience, witnesses have taken the written questions and answers to the witness stand.

In this case, he does not remember if he asked the witnesses whether the questions and answers were correct. He did not compare the police report against the questions. He did not know who wrote the questions and answers. He does not think he informed the grand jury that the witnesses were given the questions and answers.

The transcript of the grand jury hearing on June 23, 1993 was received into evidence. The transcript contained the testimony of Honolulu Police Officer Michael Cusumano, the investigating officer, and Rudy Wood, the hotel security officer who discovered the subject drugs and drug paraphernalia. The questions asked of Officer Cusumano and the answers he gave at the Grand Jury hearing were exactly as written by Deputy Seto. An examination of witness Woods' testimony indicates that, while he did not testify exactly as the answers were written, his testimony followed the script provided by the State.

---

**3.** HRS § 712–1243 (1993) provides as follows:

**Promoting a dangerous drug in the third degree.**
(1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.
(2) Promoting a dangerous drug in the third degree is a class C felony.

In this case, the prosecutor provided the witnesses with the questions that would be propounded to the grand jury witnesses and the answers to those questions. The grand jury was not informed that the prosecutor had provided the answers to the witnesses. The justification for providing answers is to make the proceedings more efficient and less lengthy. However, in doing this, the prosecution in effect suggested the words which should constitute the witnesses' tesimony [sic].

In Hawaii, constitutional due process requires a fair and impartial grand jury proceeding. *State v. Rodrigues,* 63 Haw. 412, 417, 629 P.2d 1111 (1981). A tendency to prejudice the grand jury may be present when a prosecutor engages in conduct which invades the province of the grand jury. *State v. Joao,* 53[sic] Haw. 226, 229, 491 P.2d 1089 (1971). The province of the grand jury is to serve as a barrier to reckless or unfounded charges and to serve as a " 'shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens ... ' " *State v. Kahlbaun,* 64 Haw. 197, 203, 638 P.2d 309 (1981)[ (]quoting *United States v. Mandujano,* 425 U.S. 564, 571, 96 S.Ct. 1768, 1774, 48 L.Ed.2d 212 (1976), *State v. Pacific Concrete & Rock Co.,* 57 Haw. 574, 560 P.2d 1309 (1977)[) ]. The Hawaii [Hawai'i] Supreme Court has acknowledged that the grand jury system has been criticized as being a mere "rubber stamp" of the prosecuting attorney rather than serving as a shield against unfounded charges. *Id.* Because a defendant is constitutionally entitled to a fair and impartial grand jury proceeding, any violation of that right may result in an order dismissing the indictment. *Joao* at 230, 491 P.2d 1089.

Here, the testimony was prepared beforehand by the State. The grand jury therefore did not have before it the untainted testimony of the witnesses. It was precluded from evaluating the actual ability and the true capacity of the witnesses' [sic] to observe, to recollect, and to describe material facts. Rather, what the grand jury had was a version of the facts which had been sifted and molded by the prosecution. Under the circumstances, the jury would not be able to exercise the "considered judgment" expected of it. This would truly make the grand jury a "rubber stamp" of the prosecution's case.

A grand jury subjected to this question and answer procedure would not be operating independently of outside influence. Such a procedure invades the province of the grand jury. It clearly misleads the grand jurors into believing that the witness' [sic] testimony was the witness' [sic] own statement when in fact the testimony had been scripted by the prosecutor. Where the conduct of the prosecutor invades the province of the grand jury, the Hawaii [Hawai'i] Supreme Court has indicated that it is unnecessary for the Defendant to prove the grand jury was in fact influenced. *Joao* at 229, 491 P.2d 1089 (citation omitted). Such a burden may well be impossible to meet and would require the court to speculate as to the grand jury's actions. *Id.* (citation omitted).

Under the circumstances, the prosecution's practice of providing grand jury witnesses with the answers to questions they would be asked so fundamentally invades the province of the grand jury that the indictment herein must be dismissed. Dismissal shall be without prejudice.

On June 2, 1994, the State filed a motion for reconsideration of the Dismissal Order. The judge who heard the motion for reconsideration (Judge 2) was not the same judge who had issued the Dismissal Order (Judge 1). After allowing the State to supplement the record with the testimonies of the police officer and security guard who had testified before the grand jury, the testimony of the head of the screening and intake branch of the prosecutor's office, and a photograph of a sign posted on the wall of the grand jury waiting room, Judge 2 orally denied the motion to reconsider. On August 4, 1994, Judge 2 issued "Findings of Fact, Conclusions of Law, and Order Denying State's Motion for Reconsideration of [the Dismissal Order]" (Reconsideration Decision), concluding, as a matter of law, that he "was bound given the

facts and circumstances to defer to [Judge 1] as required by principles of comity and courtesy[,] ... [t]here [were] no cogent reasons ... [to] do otherwise, either legally or factually, and ... it [was] the law of the case as Court [sic][saw] it under *Wong v. City and County of Honolulu* [66 Haw. 389, 665 P.2d 157 (1983)] and *State v. Mabuti* [72 Haw. 106, 807 P.2d 1264 (1991)]."

## ISSUES ON APPEAL

The State contends that the Dismissal Order was clearly erroneous because it was based on the following Findings of Fact, which were not supported by or misstated the evidence in the record, and, thus, were clearly erroneous:

(1) "[i]n [Deputy Prosecutor Sano's (Sano) ] experience, [grand jury] witnesses have taken the written questions and answers to the witness stand";

(2) "Deputy Prosecutor Sano testified that, '[h]e did not know who wrote the questions and answers'" given to the grand jury witnesses; and

(3) "[t]he grand jury was not informed that the prosecutor had provided the answers· to the witnesses. The justification for providing answers is to make the proceedings more efficient and less lengthy. However, in doing this, the prosecution in effect suggested the words which should constitute the witnesses' testimony."

The State also contends that the following Conclusions of Law, contained in the Dismissal Order, were wrong:

(1) "Here, the testimony was prepared beforehand by the State. The grand jury therefore did not have before it the untainted testimony of the witnesses. It was precluded from evaluating the actual ability and the true capacity of the witnesses' [sic] to observe, to recollect, and to describe material facts. Rather, what the grand jury had was a version of the facts which had been sifted and molded by the prosecution. Under the circumstances, the jury would not be able to exercise the 'considered judgment' expected of it."

(2) "A grand jury subjected to this question and answer procedure would not be

operating independently of outside influence. Such a procedure invades the province of the grand jury. It clearly misleads the grand jurors into believing that the witness' [sic] testimony was the witness' [sic] own statement when in fact the testimony had been scripted by the prosecutor."

Finally, Defendant contends that Judge 2, in his Reconsideration Order, erred in concluding, as a matter of law, that he was bound by principles of comity and courtesy to defer to Judge 1's ruling. Because we conclude that the Dismissal Order was entered erroneously, it is unnecessary for us to address this final contention.

## DISCUSSION

### A. *Standard of Review*

"A trial court's ruling on a motion to dismiss indictment is reviewed for an abuse of discretion." *State v. Mendonca*, 68 Haw. 280, 283, 711 P.2d 731, 734 (1985) (citation omitted). "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party-litigant." *State v. Jackson*, 81 Hawai'i 39, 47, 912 P.2d 71, 79 (1996) (citations and internal quotation marks omitted).

Therefore, a first step in determining whether a trial court has abused its discretion in dismissing an indictment is to determine what rules or principles of law or practice govern the dismissals of indictments.

### B. *Rules or Principles of Law or Practice Governing Dismissals of Indictments*

In entering its Dismissal Order, the circuit court relied primarily on *State v. Joao*, 53 Haw. 226, 491 P.2d 1089 (1971), where the Hawai'i Supreme Court affirmed the quashing of an indictment. In *Joao*, the supreme court initially noted that " where the indictment mechanism is employed, it must be through a grand jury which is not only 'legally constituted,' but also 'unbiased.' ... [T]he requirement that an indictment be returned by an unprejudiced grand jury emanates from the due process clause of the Four-

teenth Amendment to the United States Constitution." *Id.* at 228, 491 P.2d at 1091 (citations omitted). The court then held that

[a] tendency to prejudice may be presumed when, in presenting cases to the grand jury, the trial court finds that the prosecutor or his deputies have engaged in

words or conduct that will invade the province of the grand jury or tend to induce action other than that which the jurors in their uninfluenced judgment deem warranted on the evidence fairly presented before them.

*Id.* at 229, 491 P.2d at 1091 (citations omitted). In *Joao,* the circuit court had found that the grand jury "might not have returned an indictment" if the deputy prosecutor had not made a comment to the grand jury vouching for the credibility of the key witness. Such a finding, the supreme court held, established a "tendency to prejudice" the grand jury and, therefore, it was unnecessary for the defendants to prove that the grand jury was in fact influenced by the comment.

Since *Joao,* however, the Hawai'i Supreme Court has substantially retreated from its holding that a "tendency to prejudice" may be presumed from certain words or conduct of the prosecutor before the grand jury.

In 1972, for example, the supreme court reversed a trial court's dismissal of an indictment, concluding that the defendant had failed to meet his burden of proving that the presentation of hearsay testimony to the grand jury rendered the indictment defective. *State v. Layton,* 53 Haw. 513, 517, 497 P.2d 559, 561–62 (1972). The court held that there is a "presumption that an indictment has been found by a grand jury upon sufficient evidence." *Id.* at 516, 497 P.2d at 561. This presumption, "until the contrary appears, is that a grand jury acted upon legal evidence, and the *burden rests on him who asserts that it did not to prove it.*" *Id.* (citation and internal quotation marks omitted; emphasis added). Further, "[if] the record is silent ..., it will be presumed the indictment was found in the manner the law directs." *Id.* at 517, 497 P.2d at 561–62 (citation and internal quotation marks omitted).

Four years later, the Hawai'i Supreme Court reversed another dismissal of an indictment, based on the rule that

where sufficient legal and competent evidence is presented to a grand jury, the reception of illegal or incompetent evidence would not authorize the court to set aside an indictment if the remaining legal evidence, considered as a whole, is sufficient to warrant the indictment.

*State v. Scotland,* 58 Haw. 474, 476, 572 P.2d 497, 498 (1977) (citing *State v. Hassard,* 45 Haw. 221, 365 P.2d 202 (1961)). Although the defendant had relied on *Joao* in his appeal, the supreme court distinguished *Joao* on its facts and did not hold, as it had in *Joao,* that the lower court's finding of a "tendency to prejudice the [defendant]" was determinative. *Id.* at 475, 478, 572 P.2d at 498, 499–500. Instead, the supreme court made clear that the burden of proof lay with the defendant:

[I]n proceedings determining the validity of an indictment, *the state does not have the burden* of proving that the alleged illegal or improper testimony is not prejudicial; *it is the duty of the defendant to come forward and present a case proving prejudice.* In the absence of proof, the court will not assume or conjecture, as a matter of fact, that the grand jury deliberations were so infected as to invalidate the indictment. . . . We rule that a specific showing of prejudice is necessary to make erroneous the action of the trial judge in refusing to dismiss the indictment.

*Id.* at 476–77, 572 P.2d at 499 (citations, internal quotation marks, and parentheses omitted; emphases added). The court noted that unlike *Joao,* the prosecutor's conduct had not amounted to misconduct, and there was no express finding by the lower court that "the grand jury might not have returned an indictment if the improper statement had not been made." *Id.* at 478, 572 P.2d at 499–500.

In 1978, the supreme court affirmed another denial of a motion to dismiss an indictment and reinforced its rule that the defendant bears the burden of proof when challenging an indictment. *State v. Murphy,* 59 Haw. 1,

575 P.2d 448 (1978). The defendant in *Murphy* had argued that his indictment was improper because it was based on certain hearsay testimony elicited during the grand jury proceeding. In refusing to establish an iron-clad rule that dismissal of an indictment would be warranted whenever the prosecution presented hearsay evidence without showing necessity, the supreme court clarified that the burden was on the defendant to show a wrongful purpose:

> We do agree ... that excessive use of hearsay testimony tends to be destructive of the grand jury's function. The preferable practice would be ... for the prosecution to present witnesses who are able to testify from first-hand knowledge whenever possible. Nevertheless, where the hearsay testimony was not used deliberately in the place of better evidence to improve the case for an indictment, dismissal of the indictment is not required.

59 Haw. at 6, 575 P.2d at 453 (citations omitted). The *Murphy* court then looked to the facts, and finding no evidence that the hearsay testimony was inaccurate or that the prosecutor's purpose was improper, affirmed the denial of the dismissal. *Id.* at 6–7, 575 P.2d at 453–54.

In *State v. Apao*, 59 Haw. 625, 586 P.2d 250 (1978), the supreme court affirmed another denial of a motion to dismiss the indictment, again finding that *Joao* was not controlling. *Id.* at 637–38, 586 P.2d at 258–59. Distinguishing *Joao* on its facts, the court noted that the prosecutor in *Joao* had "made statements to the [grand jury] panel calculated to bolster the witness' [sic] credibility," plus, "knowing the truth, did nothing to correct the mistaken impression" left by the witness's understatement of his criminal record to the grand jury. *Id.* at 637, 586 P.2d at 258. The court found substantive differences in the testimony at issue in *Scotland* and the testimony "condemned in *Joao.*" *Id.* The court also found significant the absence of any contention that the indictment would have failed without the contested testimony. *Id.* Reiterating that the burden lies on the

"defendant to come forward and present a case proving prejudice," *id.* at 637, 586 P.2d at 259, the court found the factual evidence to be "insufficient to show that the alleged improper testimony ... [had] Clearly [sic] influenced the jurors[.]" *Id.* at 638, 586 P.2d at 259.

In *State v. Bell*, another 1978 case, the Hawai'i Supreme Court explained the difference between grand jury proceedings and trial proceedings and emphasized the broad discretion exercised by the prosecution in seeking an indictment. *State v. Bell*, 60 Haw. 241, 589 P.2d 517 (1978). Declining to adopt a *per se* rule that a prosecutor's failure to present any and all known exculpatory evidence to a grand jury would warrant dismissal of the indictment,[4] *id.* at 245–48, 589 P.2d at 520–21, the court explained that

> [a] grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, it is an Ex parte investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person.
>
> To require the prosecutor to present any and all information which would have a tendency to exculpate the accused would, in our view, confer upon grand jury proceedings the adversary nature which is more properly reserved for the actual trial phase of prosecution.
>
> \* \* \*
>
> Such a procedure would unnecessarily impinge on the prosecution's broad discretion and would inject confusion and delay into the grand jury indictment process.
>
> Moreover, in our view, a defendant's right to due process would not be impinged where the prosecution is not required to present all exculpatory evidence to the grand jury. As stated, the grand jury phase is devoted only to a preliminary determination of whether criminal proceedings should be instituted against any person. The full trial phase with its attendant evidentiary and procedural restrictions still remains the actual adjudicatory

---

4. The court expressly rejected the American Bar Association's standard, The Prosecution Function § 3.6(b) (1971), which provides:

The prosecutor should disclose to the grand jury any evidence which he knows will tend to negate guilt.

stage of the guilt or innocence of the accused.

*Id.* at 243–44, 246, 589 P.2d at 519–20 (citing *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974)). Then, finding no evidence of prejudice, the supreme court refused to conclude on its own that "inclusion of ... [the] testimony could have induced the grand jury not to return ... [the] indictment," and reversed the dismissal of the indictment. *Id.* at 248, 589 P.2d at 521.

In 1980, the Hawai'i Supreme Court issued an opinion highly significant to the instant case. In *State v. Pulawa,* 62 Haw. 209, 614 P.2d 373 (1980), the supreme court set forth rules clearly limiting the circumstances that would justify the dismissal of an indictment, and placed *Joao* in the context of these rules. Initially, the court reviewed its prior holdings where prosecutorial misconduct in grand jury proceedings had been alleged, noting its conclusions in *Joao,* and in *Scotland,* which party had the burden of proving that an indictment should be dismissed:

> [I]n proceedings determining the validity of an indictment, the state does not have the burden of proving that the alleged illegal or improper testimony is not prejudicial; it is the duty of the defendant to come forward and present a case proving prejudice. In the absence of proof, the court will not assume or conjecture, as a matter of fact, that the grand jury deliberations were so infected as to invalidate the indictment. We rule that a specific showing of prejudice is necessary to make erroneous the action of the trial judge in refusing to dismiss the indictment.

5. The *Pulawa* court further quoted from *Costello,* illustrating the Supreme Court's reluctance to constrain grand jury proceedings and the Court's concern over the delay that such challenges would engender:

> The petitioner in Costello had urged that the Court should exercise its power to supervise the administration of justice in federal courts and establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence. The Court responded to this contention that '[n]o persuasive reasons are advanced for establishing such a rule. It would run

*Id.* at 214, 614 P.2d at 376 (quoting *Scotland,* 58 Haw. at 476–77, 572 P.2d at 499; citations, internal quotation marks, and parentheses omitted). The supreme court then reiterated that "[t]he presumption, until the contrary appears, is that a grand jury acted upon legal evidence, and the burden rests on him who asserts that it did not to prove it." *Id.* (quoting *State v. Layton,* 53 Haw. 513, 516, 497 P.2d 559, 561 (1972)).

The *Pulawa* court then turned its attention to the standard of proof which a defendant must meet in order to successfully challenge the validity of an indictment on grounds of prosecutorial misconduct. The court initially noted that

> [a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for trial of the charge on its merits. The Fifth Amendment requires nothing more.

*Id.* at 214, 614 P.2d at 377 (quoting *Costello v. United States,*[5] 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956); internal quotation marks omitted). The court then cited *United States v. Kennedy,* 564 F.2d 1329 (9th Cir.1977), for the proposition that

> *only in a flagrant case* and perhaps only where knowing perjury, relating to a material matter had been presented to a grand jury should the trial judge dismiss an otherwise valid indictment returned by an apparently unbiased grand jury.

*Id.* at 215, 614 P.2d at 377 (emphasis added). Further elaborating on the 9th Circuit's "flagrant case" rule, the court quoted from *United States v. Samango,* 607 F.2d 877, 882 (9th Cir.1979), as follows:

> counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial.'
> *State v. Pulawa,* 62 Haw. 209, 215, 614 P.2d 373, 377 (1980) (citing *Costello v. United States,* 350 U.S. 359, 364, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956)).

[T]he grand jury need not be advised of all matters bearing upon the credibility of potential witnesses. Dismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way, as where perjured testimony has knowingly been presented.... Although deliberate introduction of perjured testimony is perhaps the most flagrant example of misconduct, other prosecutorial behavior, even if unintentional, can also cause improper influence and usurpation of the grand jury's role.

*Id.* (internal quotation marks omitted). In *Samango,* a federal court had dismissed an indictment because of an accumulation of "errors and indiscretions" which together "operated to the defendants' prejudice by producing a biased grand jury."[6] *Samango,* 607 F.2d at 884. The *Pulawa* court then stated that it considered *Samango* and *Joao* to be "extreme" cases. *Pulawa,* 62 Haw. at 216, 614 P.2d at 377.

The supreme court then adopted the rule stated by the cited cases and expressed in *State v. Schamberg,* 146 N.J.Super. 559, 370 A.2d 482, 485 (1976), as follows:

Unless the prosecutor's misconduct before a grand jury is *extreme and clearly infringes* upon the jury's decision-making function it should not be utilized as a stepping stone to dismissal of an indictment. As has often been observed, an indictment should *only be quashed on the clearest and plainest grounds.*

6. In *Samango,* the prosecutor gave as evidence, transcripts of testimony to a prior grand· jury which were highly prejudicial to defendant. *United States v. Samango,* 607 F.2d 877, 883 (9th Cir.1979). The court noted that the prosecutor included a transcript of testimony by the defendant, Samango, knowing that it contained nothing needed in the indictment, but presented "an impressive repertory of insults and insinuations" that "definitely conveyed the prosecutor's belief that Samango was guilty and evasive" and " 'served no other purpose than calculated prejudice.' " *Id.*

In a transcript of a co-defendant's prior testimony, the prosecutor had asked questions of events that happened long before the acts at issue of which the witness could have had no knowledge, so that, in effect, "the prosecutor ... actually supplied the [prejudicial] testimony." *Id.*

*Id.* at 218, 614 P.2d at 378 (emphases added). Applying the "extreme misconduct" rule, and noting that the trial court had found neither prosecutorial misconduct nor undue influence on the grand jury, the *Pulawa* court affirmed the denial of the motion to dismiss. *Id.* at 217–18, 614 P.2d at 378.

Subsequently, in *State v. Mendonca,* 68 Haw. 280, 283, 711 P.2d 731, 734 (1985), the supreme court reiterated its position that "[d]ismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way, as where perjured testimony has knowingly been presented[.]" (Citation and internal quotation marks omitted.)

■ It is clear from the foregoing Hawai'i case law, that the Hawai'i Supreme Court has been reluctant to overturn indictments or to infringe on the broad discretion of the prosecutor to present its case to the grand jury. With the exception of *Joao,* the cases also demonstrate that in this jurisdiction, as long as an indictment is valid on its face, the burden is on the defendant who seeks dismissal of the indictment to prove that any improper presentation of evidence to a grand jury was so extreme and flagrant that the grand jury was clearly overreached or deceived in a significant way, thus warranting dismissal of the indictment on due process grounds.

There are practical reasons for the Hawai'i rule. As the United States Supreme Court

The court also criticized the prosecutor's offer to prepare a proposed indictment, and the prosecutor's imposition of a nine-day deadline on the grand jury that "certainly discouraged thorough, thoughtful, and independent evaluation of the evidence." *Id.* Furthermore, the hearsay nature of the live testimony by a drug enforcement agent "was not necessarily ... apparent to the grand jurors, who might have been misled into thinking [the agent] was describing his own observations." *Id.* The court also noted that the agent referred to the accused as "defendants," the prosecutor and the agent recounted Samango's evasiveness and failure to cooperate in the case, and the grand jury was interested in more live testimony but was apparently left ignorant of its power to call witnesses. *Id.*

observed in *Costello v. United States*, 350 U.S. at 361, 76 S.Ct. at 408:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment.

### C. The Circuit Court Overlooked the Relevant Case Law in Dismissing the Indictment

In dismissing the indictment, the circuit court relied on *Joao* as establishing the following propositions: (1) that a tendency to prejudice the grand jury may be present when a prosecutor engages in conduct which invades the province of the grand jury; (2) that any violation of a defendant's constitutional right to a fair and impartial grand jury proceeding may result in dismissal of the indictment; and (3) when the conduct of the prosecutor invades the province of the grand jury, it is unnecessary for the defendant to prove that the grand jury was in fact influenced.

However, the circuit court overlooked the subsequent holdings of the Hawai'i Supreme Court which narrowly construed *Joao*, established a presumption in favor of an indictment's validity, and imposed a burden on the defendant to prove that any improper presentation of evidence to a grand jury was so extreme and flagrant that it invaded the grand jury process and resulted in prejudice, thus requiring dismissal of the indictment. The circuit court thus applied the wrong "rules or principles of law or practice" in evaluating whether the indictment in this case should be dismissed.

### D. The Circuit Court's Disregard of Applicable Case Law Resulted in Substantial Detriment to the State

In the instant case, Defendant alleged that the State's preparation of the grand jury witnesses through the use of predicate questions and answers constituted prosecutorial misconduct which invaded the province of the grand jury. The burden was thus on Defendant to prove that the State's practice constituted misconduct so extreme or flagrant that it prejudicially invaded the grand jury's decision-making function.

However, the circuit court incorrectly presumed that the State's practice invaded the province of the grand jury. The court also wrongly concluded that "it [was] unnecessary for the Defendant to prove the grand jury was in fact influenced" by the State's practice. Because the circuit court dismissed the indictment against Defendant as a consequence of its conclusions, there was clearly a substantial detriment to the State as a result of the circuit court's disregard of the relevant case law.

### E. The State's Preparation of the Grand Jury Witnesses by the Use of Questions and Anticipated Responses Was Not Extreme or Flagrant Misconduct Which Invaded the Province of the Grand Jury

We next consider whether the evidence in the record is sufficient to support the circuit court's conclusion that "the prosecution's practice of providing grand jury witnesses with the answers to questions they would be asked so fundamentally invades the province of the grand jury that the indictment herein must be dismissed."

The evidence before the circuit court at the April 25, 1994 hearing on the Motion to Dismiss Indictment consisted of (1) a copy of the pertinent portions of the transcript of the grand jury proceedings on June 23, 1993; (2) a copy of the transcript of the February 3, 1994 hearing on the motion to compel discovery; (3) the predicate questions and answers provided to the witnesses by the prosecution; and (4) the live testimonies of deputy prosecutors Keith Seto and Bryan Sano.

The deputy prosecutors' testimonies established that the State had prepared the witnesses who testified before the grand jury by providing them with a list of questions that a deputy prosecutor expected to ask them, along with the witnesses' anticipated answers, excerpted from the witnesses' own prior statements or reports. It was also the State's practice to include with the questions and answers, instructions for each witness to look over the predicate questions and answers and note any necessary corrections to

the predicate answers. Witnesses were never told to memorize the predicate answers and testify accordingly. Rather, they were instructed to tell the truth.

According to the deputy prosecutors, the State provided the grand jury witnesses with the predicate questions and answers for several reasons: (1) to prepare witnesses for the case by focusing them on the questions and those prior statements, which, in the prosecution's view, were necessary to show probable cause; (2) to determine from the witnesses whether the answers, as excerpted, were correct; and (3) to keep the grand jury proceedings focused on the key issues so that the proceedings could be handled as quickly and efficiently as possible.

The circuit court concluded that, in attempting to make the grand jury process more efficient and less lengthy, the State "in effect suggested the words which should constitute the witnesses' testimony." As a result, "what the grand jury had was a version of the facts which had been sifted and molded by the prosecution" and the grand jury truly became "a 'rubber stamp' of the prosecution's case." This, the court found, was improper.

Based on our review of the record, and keeping in mind that the Defendant had the burden of proving that any misconduct by the State was flagrant and extreme, we disagree.

■ We note at the outset that Rule 1.1 of the Hawai'i Rules of Professional Conduct provides that "[a] lawyer shall provide competent representation to a client[,]" and that "competent representation" requires "the legal knowledge, skill, thoroughness, and *preparation* reasonably necessary for the representation." (Emphasis added.) A lawyer has a responsibility, therefore, to thoroughly prepare his or her witnesses before calling them to the stand.

On the other hand, we recognize that in the witness preparation process, a lawyer may run into numerous ethical difficulties:

> One of the most difficult ethical areas for the direct examiner involves improper suggestion at the pretrial interview....

> When interviewing a witness the direct examiner will invariably seek numerous details of the event or subject matter about which the witness will testify. The witness will then be asked to think back to the date of the incident and recall his [or her] original perception. Yet witnesses cannot ordinarily remember every detail of the past events because they do not normally have photographic minds. Instead of an "instant replay" where the original perception is returned intact, the human mind engages in a process of selective recollection. A witness will remember some things, most likely those that are of greatest importance to him [or her], but he [or she] will not remember everything. When the witness fails to remember matters that become significant at trial, the ethical problem emerges.

> In a case where the witness fails to remember something that the trial attorney believes to be significant, it is standard procedure for the attorney to seek to stimulate the witness' [sic] memory. The attorney may tell the witness how important it is to remember and explain the significance of the missing fact in terms of the entire case. The attorney may question the witness intensely (using leading questions) in an attempt to jog his [or her] memory. The attorney may show the witness a document, either his [or her] prior statement or the statement of another witness, to refresh his [or her] recollection. Any or all of these techniques may be utilized by the attorney to suggest or convey the desired answer to his [or her] witness.

> The danger is that the inherent favoritism of the witness and the lawyer's role as an advocate frequently combine to restructure the witness' [sic] memory according to the particular legal interests involved. When the end result of such preparation is the fabrication of facts and the commission of perjury, the trial attorney can no longer claim that he [or she] is merely interested in learning the truth. When the attorney's role aids the "process of reconstruction [rather] than one of recollection or recall," he has stepped over the ethical boundary line that separates permissible preparation from impermissible coaching.

P. McCloskey and R. Schoenberg, 4 *Criminal Law Advocacy* ¶ 4.05[1] at 4-17—4-18 (1996).

In this case, the circuit court concluded that the State had crossed the ethical boundary line that separates permissible preparation from impermissible coaching. Although the court acknowledged that providing grand jury witnesses with the questions they would be asked was proper, the court concluded that providing the answers to the questions was not. In light of the case law discussed above regarding the presumption of validity of the grand jury process, as well as the evidence adduced at the April 25, 1994 hearing, we disagree.

The deputy prosecutor who prepared the predicate questions and answers testified that "the answers that we send to the witnesses we get ... from the reports that we receive.... Everything that we get is directly from the witnesses' reports or from talking to the witnesses. And that's what I did in this case[.]" The deputy prosecutors testified that grand jury witnesses who were given the predicate questions and answers usually were also given written instructions and specifically told to notify the prosecutors if the predicate answers were inconsistent with their recollection. The witnesses were also instructed to tell the truth. A comparison of the predicate answers with the witnesses' answers to the predicate questions during the grand jury proceedings reflects that the witnesses did not "memorize" the predicate answers and were not "rehearsed witnesses" or "scripted automatons." In numerous instances, the witnesses' answers during the grand jury proceedings were far more detailed and descriptive than the predicate answers. The evidence did not indicate that the testimonies of the witnesses were other than their own statements based on their own recollections. There is no evidence in the record to indicate that the predicate answers provided by the prosecution to the witnesses and the testimonies of the witnesses before the grand jury were a fabrication of facts. Although the use of predicate questions and answers by the State may be risky, ethically, we cannot conclude that the State overstepped the ethical boundary line in this case.

## CONCLUSION

The circuit court disregarded rules or principles of law or practice to the substantial detriment of the State when it concluded that the State had invaded the grand jury's decision-making function by providing grand jury witnesses with predicate questions and answers and dismissed the indictment against Defendant. We conclude, therefore, that the circuit court abused its discretion when it dismissed the indictment.

Accordingly, we reverse the circuit court's dismissal order, reinstate the indictment, and remand for further proceedings.