949 P.2d 122

STATE of Hawai'i, Respondent–
Appellant,

v.

Damien CHONG, also known as Damien
Suzukawa, Petitioner–Appellee,

and

Shigemi SUZUKAWA, Defendant.

No. 18255.

Supreme Court of Hawai'i.

Nov. 25, 1997.

Peter Van Name Esser and Myles S. Breiner, on the briefs, Honolulu, for petitioner-appellee Damien Chong.

Donn Fudo, Deputy Prosecuting Attorney, on the briefs, Honolulu, for respondent-appellant State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

The defendant-petitioner-appellee Damien Chong has applied for a writ of certiorari from the decision of the Intermediate Court of Appeals (ICA) in *State v. Chong*, 86 Hawai'i 290, 949 P.2d 130 (App.1997) [hereinafter, the "ICA's decision"], which reversed the circuit court's order granting Chong's motion to dismiss the indictment against him. Put simply, the issue presented is whether the prosecution's use of pre-scripted questions and answers in connection with its grand jury witnesses is so innately prejudicial that the practice—in and of itself—violates a defendant's right to due process of law by invading the province of the grand jury or tending to induce action other than that which the grand jurors, in their uninfluenced judgment, deem warranted on the evidence *fairly* presented before them.

Citing Hawai'i Revised Statutes (HRS) §§ 602–59(b)(1) and (2) (1993), Chong has asserted in his application that the ICA's decision "contains 'grave errors of law and fact[ ]' and 'obvious inconsistencies' with 'that of the supreme court' ... in *State v. Joao*, 53 Haw. 226, 491 P.2d 1089 (1971)," and that "[t]he magnitude of these errors 'dictat[es] the need for further appeal.'" Because "the legislative history of HRS § 602–59 makes clear that we have the authority to consider

any issues that arise in this case," *State v. Bolosan*, 78 Hawai'i 86, 89, 890 P.2d 673, 676 (1995),[1] we granted Chong's application in order to address his assertion.

## I. BACKGROUND

We need not regurgitate in detail the facts and circumstances underlying the present appeal because they are more than adequately set forth in the ICA's decision. *See* ICA's decision at 2–7, 22–26. For present purposes, it is sufficient to note that, in the course of the hearing on Chong's motion to dismiss the indictment,

> [t]he deputy prosecutors' testimonies established that the [prosecution] had prepared the witnesses who testified before the grand jury by providing them with a list of questions that a deputy prosecutor expected to ask them, along with the witnesses' anticipated answers, excerpted from the witnesses' own prior statements or reports. It was also the [prosecution's] practice to include [—] with the questions and answers [—] instructions for each witness to look over the predicate questions and answers and note any necessary corrections to the predicate answers. Witnesses were never told to memorize the predicate answers and testify accordingly. Rather, they were instructed to tell the truth.
>
> According to the deputy prosecutors, the [prosecution] provided the grand jury witnesses with the predicate questions and answers for several reasons: (1) to prepare witnesses for the case by focusing them on the questions and those prior statements, which, in the prosecution's view, were necessary to show probable cause; (2) to determine from the witnesses whether the answers, as excerpted, were correct; and (3) to keep the grand jury proceedings

focused on the key issues so that the proceedings could be handled as quickly and efficiently as possible.

> . . . .
>
> The deputy prosecutor who prepared the predicate questions and answers testified that "the answers that we send to the witnesses we get . . . from the reports that we receive. . . . Everything that we get is directly from the witnesses' reports or from talking to the witnesses. And that's what I did in this case[.]" The deputy prosecutors testified that grand jury witnesses who were given the predicate questions and answers usually were also given written instructions and specifically told to notify the prosecutors if the predicate answers were inconsistent with their recollection. The witnesses were also instructed to tell the truth. A comparison of the predicate answers with the witnesses' answers to the predicate questions during the grand jury proceedings reflects that the witnesses did not "memorize" the predicate answers and were not "rehearsed witnesses" or "scripted automatons." In numerous instances, the witnesses' answers during the grand jury proceedings were far more detailed and descriptive than the predicate answers. The evidence did not indicate that the testimonies of the witnesses were other than their own statements based on their own recollections. There is no evidence in the record to indicate that the predicate answers provided by the prosecution to the witnesses and the testimonies of the witnesses before the grand jury were a fabrication of facts. . . .

ICA's decision, 86 Hawai'i at 299–301, 949 P.2d at 139–141 (some brackets and ellipsis points in original and some added).

> application for the writ. It is not descriptive of the scope of review determinative of the Supreme Court's decision to grant or deny certiorari. The Supreme Court's power in that regard is intended to simply be discretionary.
>
> Conf. Comm. Rep. No. 73, in 1979 Senate Journal, at 992 (emphasis added).
>
> *Bolosan*, 78 Hawai'i at 89 n. 5, 890 P.2d at 676 n. 5 (brackets in original).

---

1. The conference committee report regarding the enactment of HRS § 602–59 stated in pertinent part:

> [T]he application for writ of *certiorari* must state "errors of law or fact" or "inconsistencies in the decision of the [ICA] with that of the Supreme Court, Federal decisions or its own decisions, and the magnitude of such errors or inconsistencies dictating the need for further appeal." *It must be observed, that such requirement is directed only to the*

In light of the foregoing, and for the reasons discussed *infra,* we agree with the ICA's holding that, on the particular record of this case, the circuit court

abused its discretion when it dismissed the indictment against ... Chong [on the basis that the prosecution] had given each witness who testified before the grand jury (1) the questions which would be asked of the witness during the grand jury proceeding[ ] and (2) the anticipated responses of the witness as gleaned from the witness's prior statements or reports.

*Id.,* 86 Hawai'i at 291, 949 P.2d at 131.

. Nevertheless, we deem it necessary to address the accuracy, as well as the implications, of the following portion of the ICA's decision:

In entering its Dismissal Order, the circuit court relied primarily on *State v. Joao,* 53 Haw. 226, 491 P.2d 1089 (1971), where the Hawai'i Supreme Court affirmed the quashing of an indictment.... The [*Joao*] court ... held that

[a] tendency to prejudice may be presumed when, in presenting cases to the grand jury, the trial court finds that the prosecutor or his deputies have engaged in words or conduct that will invade the province of the grand jury or tend to induce action other than that which the jurors in their uninfluenced judgment deem warranted on the evidence fairly presented before them.

*Id.* at 229, 491 P.2d at 1091 (citations omitted). In *Joao,* the circuit court had found that the grand jury "might not have returned an indictment" if the deputy prosecutor had not made a comment to the grand jury vouching for the credibility of the key witness. Such a finding, the supreme court held, established a "tendency to prejudice" the grand jury and, therefore, it was unnecessary for the defendants to prove that the grand jury was in fact influenced by the comment.

Since *Joao,* however, the Hawai'i Supreme Court has substantially retreated from its holding that a "tendency to prejudice" may be presumed from certain words

or conduct of the prosecutor before the grand jury.

*Id.,* 86 Hawai'i at 294–295, 949 P.2d at 134–135 (some brackets added and some in original) (internal quotation signals omitted).

As we will explain in the remainder of this opinion, and notwithstanding the ICA's decision, a renunciation of the *Joao* analysis is unwarranted by our interpretation of this court's subsequent case law. In short, we reaffirm the principle that prosecutorial conduct that undermines the fundamental fairness and integrity of the grand jury process by "invad[ing] the province of the grand jury or tend[ing] to induce action other than that which the jurors in their uninfluenced judgment deem warranted on the evidence *fairly* presented before them," *Joao,* 53 Haw. at 229, 491 P.2d at 1091 (citations and internal quotation signals omitted) (emphasis added), is presumptively prejudicial.

## II. *DISCUSSION*

### A. The Joao *Analysis*

For purposes of establishing the context within which the decision was rendered, the facts underlying *Joao* bear repeating. After hearing the testimony of the prosecution's sole witness, Cole Kekahuna, who happened to have been the individual originally indicted for the same offense, a grand jury returned an indictment charging the two codefendants with first degree murder. The transcript of the proceedings revealed that,

in introducing Kekahuna to the grand jury, the deputy prosecutor made the following statement:

As Mr. Chung [Prosecuting Attorney for the City and County of Honolulu] has said, the witness that we will present to you this afternoon is Cole U. Kekahuna. Very briefly, Cole Kekahuna was the original defendant charged with the murder.... Cole Kekahuna has been in jail for 3½ months, and as Mr. Chung says, he has decided to make a clean breast. On his testimony, we seek an indictment....

There [was] no transcript of the prosecutor's remarks concerning Kekahuna.

When Kekahuna testified, he understated his own prior criminal record and the deputy prosecutor failed to correct the error. *Joao,* 53 Haw. at 227, 491 P.2d at 1090 (some brackets added and some in original) (ellipsis points in original).

The *Joao* defendants subsequently moved to dismiss the indictment against them on the ground that the prosecution's conduct before the grand jury had involved the following "substantial improprieties": (1) the "introduction of and reference to Kekahuna had in substance amounted to a warranty of his credibility"; (2) because "the prosecutor's remarks concerning Kekahuna were not recorded[,] it was impossible to determine with certainty what they were"; and (3) "the deputy prosecutor had permitted Kekahuna to misrepresent his own prior criminal record." *Id.* The prosecution denied any misconduct and argued that the defendants' allegations, even if true, failed to establish that their rights had been prejudiced. *Id.*

Following the hearing on the defendants' motion, the circuit court entered a finding of fact that, "although '[t]he prosecution has a duty to prosecute every case with great vigor and sometimes we all make mistakes . . . [,] the Grand Jury might not have returned an indictment if these statements backing up Kekahuna [had] not been made . . . .'" *Id.* at 227–28, 491 P.2d at 1090 (brackets and ellipsis points in original). Accordingly, the circuit court concluded as a matter of law that "the defendants were prejudiced in their constitutional rights to a fair and impartial hearing . . . ." *Id.* at 228, 491 P.2d at 1090. Based on its findings of fact and conclusion of law, the circuit court "issued an order quashing the indictment against the [defendants], 'without prejudice to the State's right to seek reindictment before another and separate grand jury.'" *Id.*

The prosecution appealed to this court. Affirming the circuit court's order dismissing the indictment without prejudice, we ruled in relevant part as follows:

Although the requirement of a grand jury indictment as a prerequisite to criminal prosecution has been limited by statute and court rule, where the indictment mechanism is employed, it must be through a grand jury which is not only "legally constituted," but also "unbiased." . . . [T]he requirement that an indictment be returned by an unprejudiced grand jury emanates from the due process clause. . . .

A tendency to prejudice may be presumed when, in presenting cases to the grand jury, the trial court finds that *the prosecutor or his deputies have engaged in words or conduct that will invade the province of the grand jury or tend to induce action other than that which the jurors in their uninfluenced judgment deem warranted on the evidence fairly presented before them.*

In the case at bar, the circuit court found that the grand jury "might not have returned an indictment" if the prosecution had not made the statement that the individual originally charged with the same offense had now "decided to make a clean breast." Such a finding certainly establishes a tendency to prejudice. It is unnecessary that the [defendants] prove that the grand jury was in fact influenced by the statements. Such a burden might well be impossible to meet. We cannot second guess the grand jury by assuming that it would have returned an indictment against the [defendants] even if the character of the proceeding had been other than what it was. We hold that the conduct of the prosecutors was contrary to those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions and therefore violated the due process clause of the Fourteenth Amendment of the Constitution of the United States[ ] and article I, section [5] of the Hawaii Constitution.

. . . .

. . . Where a defendant's substantial constitutional right to a fair and impartial grand jury proceeding is prejudiced, a quashing of the indictment emanating therefrom is an appropriate remedy.

*Id.* at 228–30, 491 P.2d at 1091–92 (citations, quotation signals, and footnotes omitted) (emphases added).

B. *Post-*Joao *Refinements*

██ Although it has had many opportunities to do so, this court has never expressly or impliedly disapproved the *Joao* analysis. For example, in *State v. Pacific Concrete and Rock Co.*, 57 Haw. 574, 560 P.2d 1309 (1977), which affirmed the dismissal of an indictment because a law clerk employed by the office of the prosecuting attorney had simultaneously assisted the deputy prosecutor in presenting the government's case and acted as the grand jury's officially appointed "special agent," we cited *Joao* for the proposition that "[d]ue process requires that where criminal prosecutions are initiated through the grand jury, that body must be able to make its determinations unburdened by external influences." *Id.* at 576, 560 P.2d at 1311.

In *State v. Scotland*, 58 Haw. 474, 572 P.2d 497 (1977), we reinstated an indictment—"the only basis" for the circuit court's quashing of which having been "the underlying prejudice alleged to have been generated by the *irresponsive statement of [a] witness,*" *id.* at 476, 572 P.2d at 499 (emphasis added)—pursuant, *inter alia,* to the following relevant analysis:

> The [defendant] argues that our ruling in *Joao* controls in the instant case. In that case[,] we found that the prosecutors[,] by attesting to the credibility of a witness to be presented to the grand jury[,] bolstered that sole witness's testimony thereby prejudicing the defendant. Furthermore, we held in that case that an express finding by the trial court that "the grand jury might not have returned an indictment had the prosecutor not made the statement" established a tendency to prejudice[ ] and that it was unnecessary to prove that the grand jury was in fact influenced by such statement. *We are satisfied that the facts in Joao and this case are dissimilar. Aside from the fact that the prosecutor's question did not amount to misconduct, there is no finding in this case by the trial court that the grand jury might not have returned an indictment if the improper statement had not been made.*

*Id.* at 478, 572 P.2d at 499–500 (emphasis added).

Affirming a murder conviction in *State v. Apao,* 59 Haw. 625, 586 P.2d 250 (1978), this court rejected the defendant's contention that *Joao* "require[d] that the indictment be dismissed," *id.* at 636, 586 P.2d at 258, on the ground that the grand jury had been improperly biased by testimony of a police officer that the defendant had been involved in a prior murder prosecution and that the current victim had been a witness against him in that case. In doing so, the *Apao* court (through Justice Kobayashi, who had previously joined in the unanimous *Joao* decision) construed and distinguished *Joao* as follows:

> In *State v. Joao, supra,* we held that the requirement that an indictment be returned by an unprejudiced grand jury emanates from the Due Process Clause ... and that a defendant need not prove that a grand jury was in fact prejudiced. A tendency to prejudice was sufficient to quash an indictment. That tendency could be presumed when the prosecutor invaded the province of the grand jury to induce action other than that which the jurors, uninfluenced, would have reached. In *Joao*[,] the prosecution presented only one witness to the grand jury. The prosecutor made statements to the panel calculated to bolster the witness' credibility by stating that the witness, who was the original defendant, "has decided to make a clean break [sic]." Further, while testifying, the witness understated the extent of his own criminal record[,] and the prosecutor, knowing the truth, did nothing to correct the mistaken impression.
>
> In our opinion, our ruling in *Joao, supra,* is not controlling herein. [The police officer] was not the sole witness who testified before the grand jury. [The defendant] has not contended that without [the police officer's] testimony, the indictment ... would not have been based on sufficient probable cause. Furthermore, the facts in this case and *Joao, supra,* are dissimilar. The testimony objected to herein cannot be equated substantively with the testimony we condemned in *Joao, supra....*

*Id.* at 636–37, 586 P.2d at 258.

In multiple cases consolidated on appeal as *State v. Bell,* 60 Haw. 241, 589 P.2d 517

(1978), the circuit court dismissed three indictments "on the ground that evidence tending to negate [the defendants'] guilt was not presented by the prosecution to the grand jury," 60 Haw. at 242, 589 P.2d at 518, and the prosecution appealed. In one of the cases, the prosecution had failed to inform the grand jury that the victim had, in a lineup, identified an individual other than the defendant as the perpetrator of the offense in question.

> The circuit court concluded that the failure of the [prosecution] to notify the grand jury of the misidentification violated the requirement that an indictment be returned by an unprejudiced grand jury.
>
> The conclusion reached by the circuit court was based primarily on *State v. Joao* ..., in which this Court held that the prosecutor's comments to the grand jury regarding a witness's motivation in testifying were prejudicial to the defendant's constitutional right to a fair and impartial grand jury proceeding. In the instant case, the circuit court viewed the failure of the prosecution to notify the ... grand jur[y] of the misidentification as being misleading to the grand jur[y] in [its] evaluation of all the evidence presented....

*Id.* at 253, 589 P.2d at 524.

> On appeal, the *Bell* court noted that,
>
> [i]n *Joao*, the circuit court reached a finding that the grand jury "might not have returned an indictment" if the prosecution had not made its statement bolstering the credibility of the State's witness.
>
> Such a finding was deemed by this Court to have established a tendency to prejudice, and we thus affirmed the quashing of the indictment.

*Id.* at 255 n. 7, 589 P.2d at 525 n. 7. Obviously implicit in the foregoing observation was the premise that the finding of fact upon which the *Joao* court had relied was not clearly erroneous. By contrast, the *Bell* court was

> not convinced of the propriety of the circuit court's finding that[,] had the prosecution informed the grand jury of the victim's misidentification, the grand jury "might well have declined to indict" [the] defendant....

> We are unable to conclude that the circuit court was correct in attempting to postulate in the first place what the grand jury might have concluded if the misidentification information had been presented to it.... [I]t would be an undue interference for a court to attempt to surmise what significance a grand jury would have attached to testimony of witnesses *not* called before it....

*Id.* at 255, 589 P.2d at 525 (emphasis in original). In other words, the *Bell* court deemed the circuit court's relevant finding of fact to be clearly erroneous as a matter of law. Accordingly, the *Bell* court did "not agree that *State v. Joao, supra,* require[d] dismissal of the indictment," *id.*, and held that "the prosecution is required only to present to the grand jury evidence which is *clearly* exculpatory in nature." *Id.* at 242, 589 P.2d at 518 (emphasis added); *accord State v. O'Daniel,* 62 Haw. 518, 521, 616 P.2d 1383, 1387 (1980) ("In *State v. Bell,* ... [w]e held ... that only when evidence presented to a grand jury clearly establishes a defense must the prosecutor instruct the grand jury on the significance of such evidence.... It would follow from *Bell* that if the evidence before the grand jury clearly establishes a lesser offense, the prosecutor must instruct the grand jury on the significance of the evidence.").

Affirming a defendant's convictions in *State v. Pulawa,* 62 Haw. 209, 614 P.2d 373 (1980), this court held, *inter alia,* that (1) a prosecutor's mere cautionary statements to a witness before the grand jury that the witness was under oath and that anything said by the witness that was not true might subject him to prosecution for perjury, as well as (2) a statement by the same prosecutor to the grand jury that, "[a]s far as any possible perjury charges against [the witness is concerned,] we'll bring that up in a further hearing if we feel we've got sufficient evidence" neither amounted to extreme misconduct nor clearly infringed upon the grand jury's decision-making function. *Id.* at 211–13, 217–18, 614 P.2d at 375–76, 378. Accordingly, the *Pulawa* court further held that the circuit court had not committed an abuse of discretion in denying the defendant's motion

to dismiss the indictment. *Id.* at 218, 614 P.2d at 378.[2]

Citing *Joao* with approval, *id.* at 213, 614 P.2d at 376, the *Pulawa* court deemed its holding to be analogous to that of *United States v. Samango*, 607 F.2d 877 (9th Cir. 1979), namely, that

the grand jury need not be advised of all matters bearing upon the credibility of potential witnesses. Dismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way, as where perjured testimony has knowingly been presented [footnote and citations of cases omitted]. .... [A] line must be drawn beyond which a prosecutor's control over a cooperative grand jury may not extend. Although deliberate introduction of perjured testimony is perhaps the most flagrant example of misconduct, other prosecutorial behavior, even if unintentional, can also cause improper influence and usurpation of the grand jury's role. [Footnote omitted.]

*Pulawa*, 62 Haw. at 215–16, 614 P.2d at 377 (quoting *Samango*, 607 F.2d at 882) (some brackets added and some in original) (internal quotation marks omitted). Thus, the *Pulawa* court adopted the following "rule," borrowed from *State v. Schamberg*, 146 N.J.Super. 559, 370 A.2d 482 (1976):

Unless the prosecutor's misconduct before a grand jury is extreme and clearly infringes upon the jury's decision-making function[,] it should not be utilized as a stepping stone to dismissal of an indictment. As has often been observed, an indictment should only be quashed on the clearest and plainest grounds. [Citation of cases omitted.]

*Pulawa*, 62 Haw. at 218, 614 P.2d at 378 (quoting *Schamberg*, 370 A.2d at 485) (brackets in original).

Finally, in *State v. Melear*, 63 Haw. 488, 630 P.2d 619 (1981), this court cited *Joao* for the dual propositions that (1) "under the due process clause, a defendant is entitled to a fair and unbiased grand jury" and (2) "due

process is violated when the prosecutor engages in conduct that invades the province of the grand jury or induces action other than that which the jurors in their uninfluenced judgment deem warranted on the evidence fairly presented to them" and held, *inter alia*, that "[t]he mere fact that [the defendant] was indicted while another person was not is insufficient to find a constitutional violation." *Id.* at 492, 630 P.2d at 623.

In light of the foregoing refinements of—and elaborations on—the *Joao* analysis, it is not surprising that this court has not cited to the decision when the circumstances presented on appeal have not involved prosecutorial overreaching or deceit. *See, e.g., State v. Layton*, 53 Haw. 513, 516, 497 P.2d 559, 561 (1972) (reversing circuit court's order granting defendant's motion to dismiss indictment where record was silent as to "whether the prosecution deliberately relied upon hearsay alone when better evidence was readily available for presentation to the grand jury"); *State v. Murphy*, 59 Haw. 1, 6–7, 575 P.2d 448, 453 (1978) ("[W]here the hearsay testimony was not used deliberately in the place of better evidence to improve the case for an indictment, dismissal of the indictment is not required. In the instant case[,] there is nothing to suggest that ... there was any improper purpose behind the prosecutor's use of hearsay[.]"); *O'Daniel*, 62 Haw. at 523, 616 P.2d at 1388 ("Under the facts of this case, there was nothing presented to indicate ... an improper purpose by the prosecutor using hearsay evidence to improve the case for indictment.").

We believe that Justice Kidwell, concurring in *Bell*, accurately distilled *Joao*'s relative place within "the criteria which should govern" the grant or denial of a motion to dismiss an indictment:

... [A] grand jury proceeding is not adversary in nature. An application of this principle is found in the rule that an indictment may not be attacked on the ground of the incompetency of the evidence considered by the grand jury, where prosecutori-

---

**2.** *Cf. State v. Mendonca*, 68 Haw. 280, 283, 711 P.2d 731, 734 (1985) ("A trial court's ruling on a motion to dismiss an indictment is reviewed for

an abuse of discretion." (Citing *State v. Corpuz*, 67 Haw. 438, 690 P.2d 282 (1984)).).

al misconduct is not involved. *State v. Layton,* 53 Haw. 513, 497 P.2d 559 (1972); *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The function of a grand jury to protect against unwarranted prosecution does not entail a duty to weigh the prosecution's case against that of the defense, or even to determine that the prosecution's case is supported by competent evidence.

On the other hand, an indictment that is the result of *prosecutorial misconduct or other circumstances which prevent the exercise of fairness and impartiality by the grand jury* may be successfully attacked. *State v. Joao,* 53 Haw. 226, 491 P.2d 1089 (1971);[3] *State v. Pacific Concrete and Rock Co.,* 57 Haw. 574, 560 P.2d 1309 (1977).

*Bell,* 60 Haw. at 256–57, 589 P.2d at 526 (Kidwell, J., concurring) (emphasis added). We therefore expressly approve and adopt Justice Kidwell's construct and overrule any dictum or analysis in the ICA's decision to the contrary.[4]

**3.** Consistently with Justice Kidwell's analysis, the *Joao* court emphasized that, in reaching its result, it was "neither passing upon the credibility of grand jury witnesses nor upon the competency or adequacy of the evidence adduced." *Joao,* 53 Haw. at 229 n. 2, 491 P.2d at 1091 n. 2. Rather, it was "the prejudicial character of the prosecutor's conduct" that was "the sole object of the court's inquiry." *Id.*

**4.** Also consistently with Justice Kidwell's analysis, this court has presumed prejudice and affirmed the dismissal of an indictment when, at the instigation of the prosecutor, the public defender was excluded from the courtroom during the impanelment of the grand jury, in substantial violation of statutory requirements:

[D]enial of public access to the [grand jury] selection process *is presumptively prejudicial and therefore does not require a specific showing of prejudice.* It would be difficult, if not impossible, for a defendant to point to a specific injury where he has been excluded from the impanelment proceedings. Public access to the impanelment process *goes to the heart of safeguarding the integrity of the grand jury.* To require the defendant to prove a personal injury would impair or destroy the safeguard.

*State v. Schmidt,* 70 Haw. 443, 448, 774 P.2d 242, 245 (1989) (citations omitted) (emphases added).

**5.** The record is devoid of any indication that the deputy prosecuting attorneys in this case com-

**C. *On The Record Before It, The* Joao *Analysis Did Not Support The Circuit Court's Order Dismissing The Indictment Against Chong.***

Given the record in this case, *see supra* section I, we hold that the prosecution's use of pre-scripted questions and answers in connection with its grand jury witnesses, called in the proceeding as a result of which the indictment against Chong was returned, did not so clearly infringe upon the jury's decision-making function and was not so innately prejudicial that the practice—in and of itself—violated Chong's right to due process of law by invading the province of the grand jury or tending to induce action other than that which the grand jurors, in their uninfluenced judgment, deemed warranted on the evidence fairly presented before them. In this connection, we agree with the ICA that, pursuant to Rule 1.1 of the Hawai'i Rules of Professional Conduct, "[a] lawyer has a responsibility . . . to thoroughly prepare his or her witnesses before calling them to the stand." ICA's decision at 23.[5]

ported themselves incompatibly with the American Bar Association's *Standards for Criminal Justice Prosecution Function* (3d ed.1993) [hereinafter, ABA Standards], most notably Standards 3–3.1 ("Investigative Function of Prosecutor"), 3–3.5 ("Relations With Grand Jury"), 3–3.6 ("Quality and Scope of Evidence Before Grand Jury"), and 3–5.6 ("Presentation of Evidence"). "A prosecutor in presenting a case to a grand jury should not intentionally interfere with the independence of the grand jury, preempt a function of the grand jury, or abuse the processes of the grand jury." Standard 3–3.6(f). "In general, the prosecutor should be guided by the standards governing and defining the proper presentation of the state's case in an adversary trial before a petit jury." ABA Standards § 3–3.5 commentary at 64. "It is not only proper but it may be the duty of the prosecutor . . . to interview any person who may be called as a witness in the case," so long as "[p]rospective witnesses [are] not . . . treated as partisans," but, rather, "as impartial and as relating the facts as they see them." ABA Standards § 3–3.1 commentary at 50.

It is also proper to caution a witness concerning the need to exercise care in subscribing to a statement prepared by another person. In the event that a written statement is signed or otherwise acknowledged by the witness as a correct representation of facts known to the witness, a copy of the statement should be furnished to the witness upon request.

### III. CONCLUSION

For the foregoing reasons, we reaffirm the *Joao* analysis and adopt the views expressed by Justice Kidwell, concurring in *Bell.* In all other respects, the ICA's decision is affirmed. Accordingly, we reverse the circuit court's order granting Chong's motion to dismiss the indictment and remand for further proceedings.

*Id.* Moreover,

> [a]fter written statements are secured by investigators, it is proper under our system, and indeed wise, for the prosecutor to interview such witnesses personally, not only to verify the investigator's report but to become familiar with the personality of the witness in order to anticipate how the witness will react on the stand....

*Id.* at 52.

On the other hand, as *Joao* should have presaged, we fully subscribe to the following principles and exhort the prosecutors in this state to abide by them on peril of undermining the fundamental fairness and integrity of the grand jury process: "[A] prosecutor must not take advantage of his or her role as the ex parte representative of the state before the grand jury to unduly or unfairly influence it in voting on charges brought before it." ABA Standards § 3–3.5 commentary at 64. "Since grand jury proceedings are generally secret and ex parte, it is particularly desirable that a record be made of the prosecutor's communications and representations to the jury." *Id.*

> Unless a prosecutor is prepared to forego impeachment of a witness by the prosecutor's own testimony as to what the witness stated in an interview or to seek leave to withdraw from the case in order to present the impeaching testimony, a prosecutor should avoid interviewing a prospective witness except in the presence of a third person.

Standard 3–3.1(g). And, finally, a

> prosecutor is barred from introducing evidence that he or she knows is false. This obligation applies to evidence that bears on the credibility of a witness as well as to evidence on issues going directly to guilt. Even if false testimony is volunteered by the witness and takes the prosecutor by surprise, if the prosecutor knows it is false, it is the prosecutor's obligation to see that it is corrected....

ABA Standards § 3–5.6 commentary at 101–02 (footnotes omitted).